572 So.2d 1363 (1990)
Robert Thomas KRAEMER, Jr., etc., et al., Petitioners,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, Respondent.
No. 75580.
Supreme Court of Florida.
December 20, 1990.
*1364 David J. Abbey of Fox & Grove, Chartered, St. Petersburg, and Thomas P. Fox of Thomas P. Fox, P.A., Tampa, for petitioners.
Larry I. Gramovot of Mallery & Zimmerman, S.C., Wausau, Wis., for respondent.
William C. Owen and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, amicus curiae for Florida Auto. Dealers Ass'n.
Jeffrey B. Shapiro and Judy D. Shapiro of Herzfeld and Rubin, Miami, amicus curiae for Florida Motor Vehicle Leasing Group.
GRIMES, Justice.
We review Kraemer v. General Motors Acceptance Corp., 556 So.2d 431 (Fla. 2d DCA 1989), because of its conflict with Susco Car Rental System v. Leonard, 112 So.2d 832 (Fla. 1959), and Lynch v. Walker, 159 Fla. 188, 31 So.2d 268 (Fla. 1947). We have jurisdiction under article V, section 3(b)(3) of the Florida Constitution.
In May of 1986, Michael A. Green entered into a closed-end lease agreement with General Motors Acceptance Corporation (GMAC) for a 1987 Nissan automobile. The lease was for a term of four years and provided that Green had an option to purchase the automobile at its market value upon the termination of the lease. Green was responsible for maintenance of the leased vehicle and for obtaining the tag and registration. He was also required to obtain liability insurance on the automobile.
On May 6, 1987, Calvin Gary borrowed the automobile from Green. While Gary was driving the automobile the following day, he was involved in an accident with another vehicle which resulted in the death of Marguerite Kraemer. At the time of the accident, Green was five months' delinquent in his payments on the lease, and the liability insurance on the automobile had lapsed for nonpayment.
GMAC sued for declaratory judgment, asserting that it was not liable for the death because GMAC did not have beneficial ownership of the car. Robert Thomas Kraemer, as husband and personal representative of the decedent, counterclaimed seeking damages from GMAC for Gary's negligence on the basis of GMAC's vicarious liability as the owner and lessor. The trial judge entered summary judgment in favor of GMAC. On appeal, Kraemer asserted that GMAC was liable under the dangerous instrumentality doctrine. However, the district court of appeal affirmed the summary judgment for GMAC. The court stated:
Here, GMAC maintained none of the indicia of beneficial ownership. The long-term lessee was free to use the vehicle in any way he chose, consistent with protecting the long-term lessor's financial interest should the lessee elect not to exercise his option to purchase.
Kraemer, 556 So.2d at 434.
Florida's dangerous instrumentality doctrine originated in the case of Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 468, 86 So. 629, 638 (1920), in which this Court said:
[O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway, is liable in damages for injuries to third persons caused *1365 by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
Thereafter, in Lynch v. Walker the Court held that a bailor for hire is vicariously liable for the negligence of the bailee under the dangerous instrumentality doctrine. Finally, in Susco Car Rental System, the doctrine was extended to hold the lessor responsible for damages resulting from the operation of the vehicle by someone other than the person to whom it was rented even though the operation was contrary to the express terms of the lease. There has been no subsequent Florida appellate decision limiting the liability of a lessor for hire under the dangerous instrumentality doctrine until the instant case.
In support of its position, GMAC relies primarily upon Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955). In that case, a man had agreed to buy a car from a used-car dealer and drove it out of the lot. About twenty minutes later, he became involved in an accident in which a third party was injured. Both the car dealer and the driver considered the purchase closed when possession of the automobile was delivered. However, the transaction was not memorialized in writing until a conditional sales contract was signed a few days after the accident. In the ensuing lawsuit by the injured plaintiff, the issue of ownership was submitted to the jury which returned a verdict in favor of the car dealer. On appeal, the court rejected the plaintiff's contention that the car dealer was vicariously liable as a matter of law. The court reasoned that the dangerous instrumentality doctrine would not be served by extending it to one who holds mere naked legal title as security for the payment of the purchase price because under such circumstances "the authority over the use of the vehicle which reposes in the beneficial owner is absent." Id. at 637.
GMAC analogizes the Evans conditional sales contract to a long-term lease and asserts that, as the lessor, it did not have beneficial ownership of the automobile involved in the accident with Kraemer's decedent. GMAC seeks to distinguish a long-term lease with the right to purchase from a short-term rental agreement under which the rental car company provides the registration, maintenance, and insurance and exercises more control over the use of the vehicle.[1]
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways. The dangerous instrumentality doctrine is unique to Florida[2] and has been applied with very few exceptions.[3] We are loath to engraft upon this doctrine a further exception that would have such farreaching consequences.
A lease is different from a conditional sales contract. See Cox Motor Co. v. Faber, 113 So.2d 771 (Fla. 1st DCA 1959) (distinguishing a lease or bailment from a conditional sales contract). A sale has been consummated under a conditional *1366 sales contract even though the vendor holds legal title as security for the payment of the purchase price. On the other hand, a lease is an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner.
Despite GMAC's contention that the beneficial ownership had passed to Green, its lease prohibited the operation of the automobile by certain drivers, limited the geographic area in which the automobile could be operated, prohibited certain uses of the automobile, and restricted the installation of equipment in the automobile. Because Green was in default on the payments, GMAC had the contractual right to reacquire possession of the automobile at the time the accident occurred. As further evidence of the fact that GMAC retained something more than the naked legal title, the lease also provided:
24. OWNERSHIP. This is a lease only and Lessor remains the owner of the vehicle. You will not transfer, sublease, rent, or do anything to interfere with lessor's ownership of the vehicle. You and Lessor agree that this lease will be treated as a true lease for Federal Income Tax purposes and elect to have Lessor receive the benefits of ownership (IRC sec. 168(1)(8)).
The contractual obligation of Green to provide insurance, maintenance, and registration were duties rather than rights of beneficial ownership. While GMAC seeks to characterize the transaction as nothing more than a security device, it did acquire title to the automobile and chose to lease it rather than to sell it. The fact that the transaction may have been structured in this manner for tax purposes does not warrant the creation of a wholesale exception to the dangerous instrumentality doctrine for long-term leases. A person who tailors a transaction in such a way as to gain tax benefits must accept the legal consequences which flow therefrom.
We also reject GMAC's contention that the legislature intended to create an exception to the dangerous instrumentality doctrine by defining owner in section 324.021(9)(a), Florida Statutes (1989), to include lessees such as Green.[4] While this definition, which was first enacted in chapter 29963, Laws of Florida (1955), had the effect of requiring certain lessees to purchase liability insurance, it did not reflect an intent to exonerate lessors from liability under the dangerous instrumentality doctrine. However, in 1986 the legislature did act to eliminate long-term automobile lessors from liability under the dangerous instrumentality doctrine under certain circumstances by the passage of chapter 86-229, Laws of Florida. That law in its present form, as codified at section 324.021(9)(b), Florida Statutes (1989), reads:[5]

Owner/lessor.  Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this paragraph shall be applicable so long as the insurance required under such lease agreement remains in effect.
In upholding the constitutionality of section 324.021(9)(b), the Fourth District Court of Appeal in Folmar v. Young, 560 So.2d 798, 800 (Fla. 4th DCA 1990), stated:
We conclude that section 324.021(9) constitutes an exception to the dangerous *1367 instrumentality doctrine in the case of long-term lessors. To support this theory, the lessor cites to the legislative history of this section. On the floor of the House, the arguments against adoption of the amendment were stated by Representative Woodruff:
Ladies and gentlemen, what Mr. Meffert is trying to do is he's trying to get certain people out from responsibility as having an ownership of an automobile, at the present time, Florida has a dangerous instrumentality rule and people go out and rent automobiles and ... they [the rental company] don't want to have to pay in case that individual has a wreck as they would presently have to pay under the State of Florida.
* * * * * *
I think what we are being asked to do here on this amendment is to change the law of Florida as it relates to the liability of the owner of an automobile. As most of you know under current law, and I think the law of all states, the owner of an automobile is financially responsible for any damages caused when that automobile is involved in in accident ... As I understand the amendment as it's been explained on the House floor, it would say that the lessor of the automobile, the owner who is allowing someone else to use it would be avoiding that liability.
In the legislative discussions concerning this amendment, the representatives repeatedly discussed the fact that leases for more than one year are nothing more than alternative methods for financing the purchase of a car. As Representative Gallagher stated:
What he is saying is that we are treating a lease that is for one year or more very similar to a purchase, and that's what it is, that's the latest way of handling cars is to lease them.
Representative Silver stated:
Many times its [sic] to the advantage of businesses to lease automobiles for a year or more, all it is, is a tax advantage to that particular business.
He later added:
Most of the people who are doing this type of arrangement are doing it as an alternative financing arrangement.
Under these circumstances, there is no reason to distinguish between the liability of the person who sells the vehicle as opposed to the lessor who leases it. As Representative Upchurch stated:
If you buy that Chevrolet or Ford or what have you, the dealer delivers that car and he has no more liability. But if he leases it to you for a long-term, he has liability. What this amendment will do, is treat the dealer the same whether he leased you the car for a long time or if he sells you the car.
It is evident that the legislators recognized that under the dangerous instrumentality doctrine long-term lessors were liable for damages caused by drivers of the leased automobiles. However, they were sympathetic to some of the arguments made by GMAC in this case. By enacting section 324.021(9)(b), they were willing to provide relief under certain circumstances, but only if the leased automobile carried the requisite liability insurance. It is significant that even if the statute were applicable to this case, it would not help GMAC because the liability insurance on the automobile had lapsed when the accident occurred.
We reject the contention that GMAC cannot be held liable for Gary's negligence under the dangerous instrumentality doctrine because it had transferred beneficial ownership of the automobile to Green under its long-term lease. Thus, we quash the opinion of the district court of appeal and remand for further proceedings.
It is so ordered.
SHAW, C.J., and OVERTON, EHRLICH, BARKETT and KOGAN, JJ., concur.
McDONALD, J., dissents.
NOTES
[1] GMAC does not suggest how it would be possible for this Court to adopt a rule which would differentiate long-term lessors from short-term lessors for purposes of liability under the dangerous instrumentality doctrine. Presumably, this would have to be decided on a case-by-case basis.
[2] W. Keeton, Prosser and Keeton on the Law of Torts § 73 (5th ed. 1984).
[3] E.g., Castillo v. Bickley, 363 So.2d 792 (Fla. 1978) (owner not liable when the car was in the custody of a repairman); Owen v. Wagner, 426 So.2d 1262 (Fla. 2d DCA 1983) (owner exonerated when the car had been stolen).
[4] Prior to the enactment of chapter 86-229, Laws of Florida, this definition was found in section 324.021(9), Florida Statutes.
[5] Neither party argues that this statute is applicable to the accident.