PER CURIAM.
Appellee, Robert Metcalf, sued appellants, Peter Norquoy and First Pennsylvania Bank, N.A. (the Bank), for injuries incurred when he was hit by an automobile, driven by Norquoy, as Metcalf was riding a bicycle on a public highway in Broward County. Based upon a jury verdict for Metcalf, the trial court entered judgment against Norquoy and the Bank. In post-judgment proceedings the judgment against the Bank was vacated. Thus, Nor-quoy has appealed the judgment in favor of Metcalf, and Metcalf has cross appealed the vacation of the judgment against the Bank.
Prior to trial Metcalf received personal injury protection payments from Nor-quoy’s insurer. Nevertheless, Metcalf contended throughout the lower court proceedings that the personal injury protection threshold requirements of the Florida No-Fault Law were inapplicable to him. Consequently, due to Metcalfs objection, the trial court refused to instruct the jury regarding the no-fault threshold requirements. Metcalf’s counsel concedes that his client’s position below was erroneous. Nevertheless, Metcalf contends on appeal that the error is harmless because the defense was not pled below and, even if it were, appellants’ evidence on the question of the permanency of Metcalf’s injuries did not negate that degree of injury. We are unable to agree with this contention.
Our examination of the pleadings reflects that both defendants affirmatively alleged the threshold defense, perhaps not in such detail as one might prefer, but surely sufficiently pled to put all on notice of its purpose. Norquoy’s defense stated: “The claims presented our [sic] subject to the terms, conditions, thresholds, and set-offs contained in the Florida No-Fault Law and are thereby barred and/or reduced.” Thereafter, Norquoy filed a Unilateral Pretrial Stipulation to which he attached as the first issue on their verdict form the question: “(1) Do you find that the Plaintiff, Robert Metcalf, sustained permanent injury within a reasonable degree of medical probability.” The Pretrial Stipulation also listed “threshold” under the disputed issues for trial. In passing, we also observe that Metcalf never attacked the sufficiency of any of these pleadings, at least, vis-a-vis the threshold question. Finally, a fair reading of the testimony of appellants’ doctor regarding Metcalf’s injuries and their permanency, if any, certainly creates a jury issue as regards their being permanent. In view of the foregoing, we conclude that reversible error was committed by the trial court’s rulings regarding the threshold requirements of the No-Fault Law.
Several of appellants’ other points raise serious questions, although, perhaps, standing alone they would not require reversal. The first of these involved Met-calf’s direct examination in which his counsel inquired about his religious affiliation. Counsel brought out that Metcalf was a Baptist and that, as such, he had great regard for the oath he had just taken and for the mandates of truth and honesty espoused by the Bible. It would appear that this evidence comes close to being inadmissible under section 90.611, Florida Statutes, and that it could have had a telling effect in this case because of the conflicts between witnesses. Furthermore, on direct examination Metcalf’s counsel had Metcalf depict his impoverished condition as a virtual “street person” since the accident. While evidence of one’s loss of income, etc., due to the accident in question is relevant, it can be cast in such a way as to be unduly prejudicial due to the sympathy impact.
CROSS APPEAL
At trial the parties stipulated, and the court instructed the jury, that the owner of the motor vehicle in question was the Bank and that the operator thereof was Norquoy pursuant to a long-term lease. Thus, when Metcalf rested at the end of all of the evidence, appellants moved for a *324 directed verdict on the grounds that the Bank held only the naked legal title without control and therefore was not vicariously liable for the operation of the vehicle. The court denied the motions and a verdict was returned against the Bank as well as Norquoy. However, upon post-trial motion the court vacated the judgment against the Bank apparently either on the theory that 1) as a long-term lessor the Bank had only naked legal title and inadequate control over the vehicle to make it vicariously liable for its operation, or 2) the Bank could not be held liable vicariously pursuant to section 324.021(9), Florida Statutes, the statute in effect at the time of the accident.
Metcalf contends on cross appeal that neither ground supports the vacation of judgment and the court erred in doing so. We agree.
The accident occurred on March 6, 1984, and suit was instituted on April 4,1985. In 1986 the legislature amended section 324.-021(9) by adding subsection (b) which, as the court held in Folmar v. Young, 560 So.2d 798 (Fla. 4th DCA 1990), exempts a lessor of a lease for one year or more from financial responsibility if the lessee is required to and does obtain certain liability insurance coverage. Folmar does not control this case because the accident herein occurred approximately two years prior to the 1986 amendment adding subsection (b), and the suit was filed more than one year prior to the amendment.
Section 324.021(9)(a), formerly section 324.021(9), cannot be relied on for the decision below because it does not create an exception to the dangerous instrumentality doctrine by defining owner to include long-term lessees. This point is made quite clear in the recent case of Kraemer v. General Motors Acceptance Corporation, 572 So.2d 1363, 1366 (Fla.1990), wherein the court rejected the arguments being made here by Norquoy when it said:
We also reject GMAC’s contention that the legislature intended to create an exception to the dangerous instrumentality doctrine by defining owner in section 324.021(9)(a), Florida Statutes (1989), to include lessees such as Green. While this definition, which was first enacted in chapter 29963, Laws of Florida (1955), had the effect of requiring certain lessees to purchase liability insurance, it did not reflect an intent tq exonerate lessors from liability under the dangerous instrumentality doctrine. However, in 1986 the legislature did act to eliminate long-term automobile lessors from liability under the dangerous instrumentality doctrine under certain circumstances by the passage of chapter 86-229, Laws of Florida.
(Footnote omitted.) In commenting on our Folmar decision the supreme court noted that, in adopting subsection (b) of section 324.021:
[t]he legislators recognized that under the dangerous instrumentality doctrine long-term lessors were liable for damages caused by drivers of the leased automobiles. However, they were sympathetic to some of the arguments made by GMAC in this case. By enacting section 324.012(9)(b), they were willing to provide relief under certain circumstances, but only if the leased automobile carried the requisite liability insurance.
Kraemer, at 1367.
It thus appears the trial court erred in granting Norquoy’s post-trial motion to vacate the judgment against the Bank.
Accordingly, on the main appeal we reverse the judgment in favor of Metcalf and on the cross appeal we reverse the order vacating the judgment against the bank and remand the cause for a new trial on both the main and cross appeal.
DOWNEY, STONE and GARRETT, JJ., concur.