634 So.2d 737 (1994)
BUSH LEASING, INC., f/k/a Bush & Cook Leasing, Inc., Appellant/Cross Appellee,
v.
Jose GALLO, Appellee/Cross Appellant.
BUSH LEASING, INC., f/k/a Bush & Cook Leasing, Inc., Appellant,
v.
Jose GALLO, Appellee.
Jose GALLO, Appellant,
v.
BUSH LEASING, INC., f/k/a Bush & Cook Leasing, Inc., Appellee.
Nos. 92-3609, 92-4362 and 92-4363.
District Court of Appeal of Florida, First District.
March 24, 1994.
Rehearing Denied May 4, 1994.
*738 Douglas A. Walker, Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Ocala, for Bush Leasing, Inc., f/k/a Bush & Cook Leasing, Inc.
Terence J. Kann, A. Abbott Law Offices, P.A., Jacksonville, for Jose Gallo.
Robert J. Link and Stephen Pajcic, Pajcic & Pajcic, P.A., Jacksonville, for Linda Thompson as amicus curiae.
Rehearing Denied May 4, 1994 in No. 92-3609.
WOLF, Judge.
We have before us three appeals arising out of an action for damages against the lessor of an automobile as a result of an accident in which the leased vehicle was involved. In case number 92-3609, Bush Leasing, Inc. (Bush) asserts that it was improperly found to be subject to liability under the dangerous instrumentality doctrine. Jose Gallo (Gallo), the plaintiff in the trial court, filed a cross appeal, arguing that the trial court erred in granting Bush's motion to amend its answer to reflect an affirmative defense that it was neither the beneficial nor deemed owner of the vehicle involved in the accident. We find that there was competent substantial evidence to support the trial court's determination that Bush was subject to liability under the dangerous instrumentality doctrine; therefore, it is unnecessary to reach the issue on cross appeal.
In case number 92-4363, Gallo appeals from a posttrial order denying his request for attorney's fees and investigative costs pursuant to section 768.79, Florida Statutes (1989). We find that the conditional offer of judgment filed by Gallo failed to comply with the statute; therefore, the trial court did not err in denying the request for fees and costs.
In case number 92-4362, Bush appeals from an order granting prejudgment interest from June 24, 1992. We find that the granting of prejudgment interest constituted error, and we reverse.
On June 9, 1989, an automobile collision occurred between a 1989 Ford Bronco operated by James Johnigean and a Mazda RX7 driven by Jose Gallo in which Linda Thompson was a passenger. The 1989 Ford Bronco was titled and tagged to Bush. Bush entered into a lease agreement with James Johnigean, Wilma Johnigean, and ServPro of Alachua County for a 1989 Ford Bronco for a period of 49 months. The agreement was entered into on March 3, 1989 and the lessees took delivery prior to April 20, 1989. Under the terms of the lease, Bush had the *739 right to declare the lease void should Johnigean fail to perform any of the conditions imposed by the lease. Some of the requirements were to operate the vehicle safely and to insure the vehicle against claims for bodily injuries and property damage with $500,000 single-limit coverage. The lease also limited who could ride as a passenger in the vehicle. Attached to the agreement was an executed addendum, incorporated by reference into the main document, which stated, "Lessee agrees to purchase at the expiration of the lease for $6,600."
On March 3, 1989, Wilma Johnigean (Wilma, a named lessee and the secretary of Johnigean, Inc.) contacted Heslin Insurance Agency and requested that the 1989 Ford Bronco be added to her personal policy which was written through State Automobile Mutual Insurance Company (State Auto). She asked that James Johnigean be listed as the principal driver. A copy of a State Auto Policy dated April 24, 1989, shows that coverage on the Bronco in the amount of $500,000 with Johnigean and Bush being named as insureds. Sometime in late March or early April, Wilma requested that the Ford Bronco be deleted. A change request form (dated April 14, 1989) was completed by an employee of Heslin and forwarded to State Auto. A representative of State Auto testified, however, that as of June 9, 1989, the records indicated that the Ford Bronco was insured in the amount of $500,000.
On April 20, 1989, Wilma insured the Ford Bronco and James Johnigean through Southern Guaranty Insurance Company (Southern Guaranty). The Southern Guaranty policy had single policy limits of $300,000. Prior to trial, the full policy limits of both policies were paid to Linda Thompson.
Gallo filed a complaint in which he alleged that he was injured in a wreck when his car was struck by a Bronco operated by Johnigean and owned by Bush. Bush filed an answer in which it admitted ownership of the Johnigean vehicle. After a pretrial conference, Bush moved for summary judgment, alleging that it was a long-term lessor and was immune from the dangerous instrumentality doctrine. The trial court denied this motion on February 5, 1992. On May 13, 1992, Bush moved for leave to amend its answer to allege that pursuant to chapter 324, Florida Statutes, it was neither the beneficial or deemed owner of the Johnigean vehicle. The motion was denied. The case proceeded to trial on June 22, 1992. Johnigean admitted responsibility for the wreck. During the course of the trial, Bush stipulated that as a result of the accident, Gallo suffered permanent injuries and incurred damages of $1,000,000. This figure was to encompass all claims of Gallo that Gallo might have arising from the collision. Bush then renewed its motion to amend its answer, which was granted over objection from Gallo.
The trial began again within hours on the ownership issue. At the conclusion of the trial, the court found that the Bronco was owned by Bush, and that Bush was responsible for the damages suffered by Gallo, pursuant to the dangerous instrumentality doctrine. A judgment was entered in the amount of $1,000,000 pursuant to the stipulation as to damages.
On November 15, 1991, Gallo had served on Bush a demand for judgment, pursuant to section 768.79, Florida Statutes, offering to settle all claims against all the defendants in exchange for $300,000. In the demand pursuant to section 768.79, Gallo stated that the offer was strictly and specifically contingent upon Gallo's successfully obtaining from his uninsured motorist carrier, Allstate, its authority to accept $300,000 and to issue a full and complete release. The defendants did not respond to the offer, and thus, by operation of law, it expired on December 15, 1991.
On August 25, 1992, Gallo filed a motion to tax costs, assess fees and costs, and determine entitlement to interest based upon the judgment being well in excess of 125 percent of the $300,000 offer.
On November 17, 1992, the trial court conducted a hearing and then entered an order denying plaintiff's motion to assess attorney fees. The court ordered, however, that prejudgment interest be paid from June 24, 1992.

Case No. 92-3609
In case number 92-3609, Bush asserts that it could not be found liable because the lease *740 agreement was a contract for purchase or a conditional sales contract, and thus, Bush was not an owner for the purpose of Florida's dangerous instrumentality doctrine. In the alternative, Bush argues that if it is considered a lessor-owner, then the lease is for more than one year; and it argues that because the insurance policies on the automobile comply with section 324.021 (9)(b), Florida Statutes, it is exempt from liability, pursuant to that statutory provision.
Gallo asserts that the agreement between Bush, the Johnigeans, and ServPro was a lease, as the vehicle, tag, and title remained in Bush's name, and Bush retained a great level of control over the vehicle. Gallo further argues that the insurance policy maintained on the vehicle did not comply with section 324.021(9), Florida Statutes (1989).
Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990) (Kraemer I), held that a long-term lessor could be liable under the dangerous instrumentality doctrine because it entrusts the use of an automobile to another party. In Kraemer I, the court distinguished between a long-term lease and a conditional sales contract:
A sale has been consummated under a conditional sales contract even though the vendor holds legal title as security for the payment of the purchase price. On the other hand a lease is an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner.
Id. In determining whether a document is a lease or a conditional sales contract, the court must look at the level of beneficial ownership maintained by the lessor:
Despite GMAC's contention that the beneficial ownership had passed to Green, its lease prohibited the operation of the automobile by certain drivers, limited the geographic area in which the automobile could be operated, prohibited certain uses of the automobile and restricted the installation of equipment in the automobile.
Kraemer v. General Motors Acceptance Corp., 572 So.2d at 1366.
In the instant case, while there was a requirement on the part of the lessee to purchase the vehicle at the end of the lease period, Bush retained some level of beneficial control over the vehicle. Bush had the right to cancel the lease and to dictate who rode as a passenger in the vehicle, and remained the named entity on the title and tag, and required a significant payment at the end of the lease prior to the transfer of the title. Under these circumstances, we find no error in the trial court's determination that the lease in this case was actually a lease under the dangerous instrumentality doctrine.
Section 324.021(9)(b), Florida Statutes (1989) reads as follows:
Owner/lessor.  Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this paragraph shall be applicable so long as the insurance required under such lease agreement remains in effect.
(Emphasis added). The purpose of the adoption of section 324.021(9)(b) was to provide relief from liability under the dangerous instrumentality doctrine for the long term lessor, "but only if the leased automobile carried the requisite liability insurance." Kraemer v. General Motors Acceptance Corp., 572 So.2d at 1367. Thus, failure to comply with the statutory prerequisite insurance requirements will result in potential liability for a lessor under the dangerous instrumentality doctrine. Gedert v. Southeast Bank Leasing Co., 19 Fla. L. Weekly D111, ___ So.2d ___ (Fla. 4th DCA Jan. 12, 1994); Trevisol v. Ford Motor Credit Co., 583 So.2d 703 (Fla. 4th DCA 1991), rev. denied, 595 So.2d 556 (Fla. 1992).
*741 The question before us is whether the single-limit policies on the subject vehicle comply with section 324.021(9)(b), Florida Statutes.[1] The statute requires split limits of liability; $100,000 per person/$300,000 per occurrence. When the language of a statute is clear and unambiguous, the statute must be given its plain and ordinary meaning. Aetna Casualty and Surety v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla. 1992). In addition, it must be assumed that the Legislature knows the meaning of the words, and has expressed its intent by the words found in the statute. Id. at 1317.
Single and split-limit coverages are not identical. As Judge Lehan expressed in his dissent in Kraemer v. GMAC, 613 So.2d 483, 490 (Fla. 2d DCA 1992), rev. denied, 624 So.2d 266 (Fla. 1993) (Kraemer II):[2]
As the majority opinion recognizes, the lease required $100,000 per person/$300,000 per accident/$50,000 property damage or $300,000 single limit coverage. As appellees argue, under the alternative of such a single limit policy there may be greater coverage than the $100,000/$300,000/$50,000 coverage required by the statute, at least in the case of only a single bodily injury from an accident. However, by permitting that alternative $300,000 single limit coverage the lease also permitted less coverage than that required by the statute. For example, such single limit coverage would not provide as much assured, i.e., minimum, bodily injury coverage for an accident as would a $100,000/$300,000/$50,000 policy if there were from the same accident substantial property damage also covered by the policy. See Smith v. State Farm Mutual Automobile Ins. Co., 479 So.2d 160, 161 n. 1 (Fla. 2d DCA 1985) ("The parties stipulated that, under a single-limit policy, there may effectively be no bodily injury coverage if a large property damage claim is paid first.").
In the same manner that an accident involving serious property damage may result in depletion of the proceeds of a single limit policy, an accident involving serious injury to one party may result in the full amount of a single-limit policy being depleted to compensate that seriously injured person. In such a situation, no or little proceeds will be available to compensate other parties injured in the accident. Thus, while single-limits coverage is generally considered to provide coverage that is equal to or greater than a split-limit policy for the insured,[3] the policy does not necessarily provide equivalent coverage for other parties who are injured in the same accident. We are, therefore, unable to conclude that Bush is exempt from liability pursuant to section 324.021(9)(b), Florida Statutes.
Affirmed.

Case No. 92-4363
Gallo asserts that the trial court erred in denying attorney's fees pursuant to section 768.79, Florida Statutes (1989), because the judgment that was entered was more than 25 percent greater than the offer of judgment with which he had previously been served.
Section 768.79(4), Florida Statutes, states that immediately upon filing of an offer and acceptance, "the court has full jurisdiction to enforce the settlement agreement." An offer of judgment that contains conditions not permitted by the statute and which will not *742 allow immediate enforcement upon acceptance is invalid. Martin v. Brousseau, 564 So.2d 240 (Fla. 4th DCA 1990). Appellant argues that the conditions imposed within its offer in the instant case are either authorized by statute or are so insubstantial that it will not affect the validity of the offer. Bridges v. Newton, 556 So.2d 1170 (Fla. 3d DCA 1990).
Section 627.727(6) requires an injured plaintiff who has uninsured motorist coverage available to him to submit a written offer from the negligent third party to its carrier for acceptance if the plaintiff wishes to retain rights under its policy. Gallo asserts that, therefore, the condition listed in its offer of judgment was statutorily authorized. We are unable to accept this position. We are unaware of anything in the uninsured motorist statute which would preclude a plaintiff from approaching his or her carrier for written authorization to settle prior to submitting an offer of judgment to the defendant. While plaintiff argues that the uninsured motorist carrier would not be under a statutory obligation to respond, we are unwilling on the record before us to say that such a procedure is unworkable, or that section 627.727(6) constitutes a specific variance to the statutory offer of judgment standard.
Because we hold that the offer of judgment was invalid on account of the conditions imposed, it is unnecessary to consider other matters raised by appellee concerning the invalidity of the offer.
Affirmed.

Case No. 92-4362
Bush asserts that the granting of prejudgment interest from the date the parties stipulated to the amount of damages was error. We agree.
We find that the stipulation as to the amount of damages entered into on June 24, 1992, in which the parties agreed that the amount of damages was $1,000,000, was intended to include prejudgment interest. Herrero v. Pearce, 571 So.2d 96 (Fla. 1st DCA 1990). It is, therefore, unnecessary for us to reach the issue of whether such damages would have been available or appropriate in this tort litigation.
The award of prejudgment interest is, therefore, reversed.
ZEHMER, C.J., and MINER, J., concur.
NOTES
[1] It is not necessary for us to determine whether both policies were in effect on the date of the accident because both policies were single limits of liability policies, and the full limits of both policies were paid out to a single plaintiff, Linda Thompson.
[2] Kraemer II is distinguishable from this case in that, while the policy did not have limitations on property damage, in actuality the accident in question did not result in tremendous property damage which might limit the amount available for personal injury to below the required statutory limits. In the instant case, the extensive personal injuries to the passenger depleted the entire policy limits thereby not providing any reimbursement for other parties who received personal injuries.
[3] This allows for the full policy limits to be used for protection of the insured even if only one plaintiff is injured. See State Farm Mutual Automobile Ins. Co. v. Messinger, 232 Cal. App.3d 508, 283 Cal. Rptr. 493 (Cal.Ct.App.3d Dist. 1991); Smith v. Millers Mutual Ins., 419 So.2d 59 (La.2d Cir.1982); Watts v. Aetna Casualty and Surety Co., 574 So.2d 364 (La. 1st Cir.1990).