VAN NORTWICK, Judge.
Providence Washington Insurance Company (Providence), the excess insurance carrier insuring the parties’ mutual insured, appeals an order denying its motion to intervene in a declaratory judgment action brought by the primary insurer, Southern Guarantee Insurance Company (Southern), in which Southern seeks a declaration that its duty to defend the parties’ mutual insured has terminated since its policy limits have been exhausted. Because we conclude that the trial court abused its discretion in denying the excess insurer’s request to intervene in the declaratory judgment action, we reverse.
The parties’ mutual insured, Bush Leasing, Inc. (Bush), leased a 1989 Ford Bronco to James and Wilma Johnigean and ServPro of Alachua County, Inc. (ServPro), a corporation owned by the Johnigeans. The Bronco, driven by James Johnigean, collided with a car driven by Jose Gallo in which Linda Thompson was a passenger. Gallo and Thompson were severely injured.
Bush’s lease contract required the Johni-geans, as lessees, to provide primary insurance coverage and to include Bush as an additional named insured in the primary insurance policy. In March 1989, the Johnige-ans added the Bronco to their existing personal insurance policy with State Automobile Mutual Insurance Company (“State Auto”). Bush was added as a named insured to the State Auto policy. In April 1989, the Johni-geans requested their agent to remove the Bronco from the State Auto policy and caused ServPro to insure the vehicle through Southern, with Bush and the Johnigeans as additional named insureds. The Bronco was not removed from the State Auto policy, however, and, as a result, at the time of the accident in June 1989, the Johnigeans and Bush were covered by two policies of insurance, one from State Auto and the other *324 from Southern. In addition, Bush was the primary insured under a policy with Providence which provided contingent liability coverage and excess liability coverage of $1,000,-000, with a $1,000,000 cap on total possible liability under the policy.
Gallo and Thompson each filed separate claims against Johnigean, ServPro and Bush for injuries and damages caused by the automobile accident. Southern managed the defense of both. After Southern and State Auto paid their respective policy limits to Thompson, Southern filed the present declaratory judgment action against the Johnige-ans, ServPro, Bush, and others, alleging that under the terms of Southern’s policy the payment of its policy limits terminated its duty to defend or settle the claims of Thompson and Gallo. Southern asked to be relieved of its responsibility to provide a defense or any other legal representation with regard to the Thompson and Gallo claims.
Providence moved to intervene in the declaratory judgment action, arguing that, as an excess insurer for the claims at issue, it had a right to intervene as a matter of law. Alternatively, Providence argues that, because of the unique facts of the case, it should have been permitted to intervene in the appropriate exercise of the discretion of the trial court. Although we conclude that Providence does not have a right to intervene as a matter of law, we agree with Providence that the trial court abused its discretion in denying intervention to Providence below.
In Union Central Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla.1992), the supreme court held that intervention pursuant to Florida Rule of Civil Procedure 1.230 involves the exercise of the trial court’s sound discretion. In Carlisle, the court expressly reaffirmed the test to determine entitlement to intervention set forth in Morgareidge v. Howey, 75 Fla. 234, 238-39, 78 So. 14, 15 (1918):
[T]he interest which will entitle a person to intervene ... must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation.
Carlisle, 593 So.2d at 507.
The Carlisle court elaborated on the role of the trial court in applying the Morgar-eidge test, as follows:
First, the trial court must determine that the interest asserted is appropriate to support intervention. See, Morgareidge. Once the trial court determines that the requisite interest exists, it must exercise its sound discretion to determine whether to permit intervention. In deciding this question the court should consider a number of factors, including the derivation of the interest, any pertinent contractual language, the size of the interest, the potential for conflicts or new issues, and any other relevant circumstance.
Id. at 507-508.
We conclude that Providence’s interest in the Southern declaratory judgment action is sufficient to support intervention under Carlisle. In U.S. Fire Ins. Co. v. Morrison Assur. Co., 600 So.2d 1147 (Fla. 1st DCA), rev. dismissed, 604 So.2d 489 (Fla.1992), this court ruled that an excess insurance carrier has the right to bring claims against the primary insurance carrier for the failure to conduct a defense in good faith under the theory of equitable subrogation. There, we reasoned that the excess carrier stands in the shoes of the mutual insured with respect to the primary insurer’s duty to defend. Id. at 1151. Because, under the rationale of U.S. Fire, an excess carrier such as Providence has a substantial interest in whether the primary carrier continues to defend the underlying negligence claims,[1] Providence clearly has an interest in the declaratory judgment litigation regarding the duty of Southern to defend the claims by Gallo and Thompson. In addition, the mutual insured *325 may not have the same incentive to defend the declaratory judgment action as Providence, since it is the defense obligation of Providence arising out of its excess insurance policy which is at risk in the instant litigation. The fact that Providence was denying that its policy had come into effect for purposes of excess coverage of the claims in the tort actions below does not estop Providence from relying on its excess policy as a basis for intervention in the declaratory judgment actions, since there was still a reasonable likelihood that the coverage conditions would be met.[2] British Aviation Ins. Co. Ltd. v. Menut, 511 So.2d 425 (Fla. 4th DCA 1987); U.S. Fire Ins. Co. v. Ted Satter Enterprises, Inc., 447 So.2d 1032 (Fla. 4th DCA 1984).[3]
REVERSED and REMANDED for further proceedings.
ZEHMER, C.J., and KAHN, J., concur.

. While the record in this case does not contain the amount of attorney fees and costs expended in defense of the Gallo and Thompson claims to date, we have no difficulty in concluding that such fees and costs must be substantial due to the protracted nature of the litigation in those cases.

. It appears that Providence’s policy has come into effect since the judgment on the Gallo claim has become final. See, Bush Leasing, Inc. v. Gallo, 634 So.2d 737 (Fla. 1st DCA), rev. denied, 645 So.2d 450 (Fla.1994).

. We accept Providence’s assurance that it does not intend to introduce any new or conflicting issues into the pending declaratory judgment litigation and that it simply desires to litigate the issue raised by Southern in its complaint, that is, whether Southern has an on-going duty to defend. However, in the event Providence does attempt to stray from this limited issue, the trial court can exercise its authority to confine the parties to the issue presented.