DAKAN, STEPHEN L., Associate Judge.
Appellant, Stephen Amba-An, was injured in a motor vehicle collision on January 11, 1995. He and his wife, Appellant Rosbel Ivy Amba-An, filed suit against the driver of the other vehicle (Bernardo Arias-Turecious), the claimed lessee of the vehicle (Albert Mor-risseau and his corporation ACM Equipment & Landscaping, Inc. — referred to as ACM) and the claimed lessor (LTI Vehicle Leasing Corporation, referred to as LTI). It is the trial court’s resolution of the claimed status of LTI which is the subject of this appeal.
*1094 Plaintiffs claimed that LTI was the lessor of the flat bed track driven by Arias-Ture-cious. Since the track was not insured in accordance with section 324.021(9)(b), Florida Statutes (1995), plaintiffs argued that LTI is vicariously liable for any damages as a result of the accident. Plaintiffs moved for summary judgment in their favor on that point. LTI conceded that the vehicle was not insured and that if the court found the agreement between it and ACM was actually a lease, it could be liable for any damages suffered by the plaintiffs as a result of the accident.
LTI also moved for summary judgment in its favor, arguing that the agreement between it and ACM was not really a lease but a financing arrangement or conditional sales contract. It pointed to the “purchase option” in the lease which gave ACM the option to purchase the track at the end of the term for the option price of one dollar as its strongest argument on this point.
The trial court entered summary judgment in favor of LTI, finding that the control exercised by LTI over the track was no more than any other conditional sales contract and the nominal purchase price option supported a conclusion that the arrangement was a financing agreement and not a lease.
Apparently ACM located the track it wanted and gave this information to LTI. The agreement between ACM and LTI lists Hertz Equipment as the “dealer/seller.” The written agreement between ACM and LTI calls for an advance deposit of $1251.60 and states that this deposit is equal to two monthly payments. The agreement calls for 48 monthly payments of $625.80 a month. There is' no annual percentage rate nor any other interest rate mentioned in the agreement.
The agreement is entitled “Commercial Vehicle Lease Agreement” and lists LTI as the lessor and ACM as the lessee. Under the agreement, LTI retains title to the vehicle. The lessee cannot change or remove any tags, insignia, or lettering which is on the truck, and if asked by the lessor, lessee is required to put labels, plates, or other markings on the track, supplied by the lessor, stating that the track is owned by the lessor. Lessee is required to provide lessor with a set of keys to the track.
The lease contains the following language: Lessor is hereby authorized by Lessee, at Lessee’s expense, to cause this lease or any financing statements or other documents in respect of this lease showing the interest of Lessor in this Vehicle to be filed or recorded and refiled and re-recorded and Lessee agrees to execute and deliver any statement or documents requested by Lessor for such purpose....
(Emphasis supplied.)
The agreement also requires the lessee to return the truck in good operating condition and with the same or comparable equipment which was on the track when it was delivered to lessee. Although the lessee may not assign the lease without the lessor’s written permission, the lessor (without written permission from the lessee) may assign “its interest under this lease, and ... grant a security interest in this vehicle.”
The lease provides that liability insurance or personal injury protection insurance covering the lessee is not provided by lessor and that lessee’s insurance coverage is primary. The lease also requires the lessee, at its expense, to keep the track insured against all risks of loss or damage and carry $100,-000/300,000 coverage.
This court concludes that.the agreement between LTI and ACM, entitled “Commercial Vehicle Lease Agreement,” is in fact a lease ... just as it says. LTI retains title to the track. ACM is required to give LTI a set of keys for it. ACM is required to display signs (if asked) indicating LTI owns the track. ACM is required to return the track in good operating condition. No annual percentage rate or any other type of interest is mentioned in connection with the payments. Although ACM may not assign its interest in the lease without LTI’s written permission, LTI may assign its interest at will and grant a security interest in the track. (It would seem an unusual business practice to grant a security interest in a vehicle to which LTI— as it claims — only has a security interest.) The language regarding financing statements and other documents indicates that the draft *1095 er of the lease thought it really was a lease ... at least at the time it was drafted. The insurance provisions of the lease require ACM to carry liability insurance in the amount required by section 324.021(9)(b), Florida Statutes (1995). If the lease were truly a financing agreement of some kind, the “lessor” would only be concerned with being a named insured in an insurance policy protecting the value of the truck.
The issue of liability of a lessor of a motor vehicle for damage caused by the negligent operation of a lessee was settled by the Supreme Court of Florida in Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla.1990). The court held that long-term lessors of motor vehicles were subject to vicarious liability under this state’s dangerous instrumentality doctrine unless the lessor complies with the provisions of section 324.021(9)(b). The court pointed out that a lease is different from a conditional sales contract. A sale has been consummated under a conditional sales contract even though the vendor holds legal title as security for payment. A lease is an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner. In that case, the court held that the agreement between the lessor and lessee was in fact a lease.
As in Kraemer, supra, the contractual obligations of ACM were duties rather than rights of beneficial ownership.
The fact that the transaction may have been structured in this manner for tax purposes does not warrant the creation of a wholesale exception to the dangerous instrumentality doctrine for long-term leases. A person who tailors a transaction in such a way as to gain tax benefits must accept the legal consequences which flow therefrom.
572 So.2d at 1366. The agreement between LTI and ACM was a long term lease of a motor vehicle. The minimal purchase option at the end of the term does not convert it to a financing agreement. See Bush Leasing, Inc. v. Gallo, 634 So.2d 737 (Fla. 1st DCA 1994).
This court does agree with LTI that there are no genuine issues of material fact requiring resolution by a finder of fact. This court finds that as a matter of law, the agreement between LTI and ACM is a lease and that the trial court erred in granting summary judgment for LTI.
REVERSED and REMANDED for proceedings not inconsistent with this opinion.
STONE, C.J., and GROSS, J., concur.