# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2009

Charles R. Fulbruge III
Clerk

No. 08-10686

PRISCILLA S CATES, Individually and as the administrator of the Estate of Bobby Ray Cates

Plaintiff-Appellee

v.

HERTZ CORPORATION

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:00-CV-121

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

In this second appeal to our court for this action, Hertz Corporation challenges the district court's granting Priscilla Cates' motion for judgment, regarding Hertz' being vicariously liable to Cates under Florida law for an automobile accident in which, through a trial in 2002, a lessee of a Hertz automobile was held at fault. Prior to that trial, Hertz had been dismissed from this action.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Primarily at issue are: (1) whether the district court determined correctly that Florida courts would apply that State's "dangerous instrumentality doctrine" to this action; and (2) whether, if the doctrine does apply, the action should be remanded to district court for a trial for Hertz on its vicarious liability and damages. AFFIRMED.

I.

This action arises out of an automobile accident in Texas. On 29 June 1998, Mr. and Mrs. Creamer, Florida residents, leased a vehicle from Hertz in Mrs. Creamer's name in Panama City, Florida. In doing so, they told the Hertz representatives at the rental facility that they planned to make a 24-hour journey from Panama City to Spearman, Texas, without stopping, by alternating driving shifts. That day, the Creamers reached Texas around 11 p.m. Early the next morning, while driving through Texas, Mr. Creamer fell asleep at the wheel, causing an accident that severely injured Bobby Cates, a Texas resident.

In June 2000, in the Northern District of Texas, Priscilla Cates, Mr. Cates' wife, filed this diversity action, in her individual capacity and as guardian of her severely-injured husband, against the Creamers and Hertz. The Creamers were sued under Texas law for negligently causing the collision, with damages for medical expenses and lost wages being sought. Additionally, the action sought to hold Hertz vicariously liable, under Florida's dangerous instrumentality doctrine, for Mr. Creamer's negligence. Under that doctrine, an owner or lessor of a vehicle who entrusts it to another is held vicariously liable when that person operates it negligently.

Hertz moved for summary judgment, maintaining Texas, not Florida, law controlled. Under Texas law, the only possible claim against Hertz was for negligent entrustment, and Hertz contended it would not be liable. The district court agreed that Texas law applied and dismissed Hertz.

The action against the Creamers was tried in 2002. After a verdict for the Creamers, in which the jury found no negligence, the district court granted a new trial. In the second trial that year, the jury found Mr. Creamer 70 percent at fault. The district court awarded damages, including future damages, in the amount of $2,156,000, and prejudgment interest of $851,782.47.

Following entry of final judgment, Cates appealed the dismissal of Hertz, contending that Florida, not Texas, law applied to the vicarious-liability issue. Mr. Creamer also appealed.

In November 2005, our court affirmed the judgment against Mr. Creamer. *Cates v. Creamer*, 431 F.3d 456, 462 (5th Cir. 2005). For the vicarious-liability issue for Hertz, our court conducted a choice-of-law analysis under Texas law. Applying the Restatement (Second) of Conflicts of Laws, adopted by Texas, it conducted both an "interest" analysis under Restatement § 6, as well as a "most significant relationship" analysis under both § 145 (discussing relationships generally) and § 174 (involving relationships with regard to vicarious liability specifically).

Under § 6, our court observed that both Texas and Florida had minimal interest in seeing their law applied. *Id.* at 465. When conducting the relationship-to-the-issue examination under §§ 145 and 174, however, our court ruled: "Florida clearly has the greater connection to the facts and circumstances as they relate to the vicarious liability issue". *Id.* at 465-66.

In analyzing the various contacts with a State addressed in § 145, our court noted: "The most relevant relationship is that which arises from the lease of the automobile. . . . Creamer . . . is a Florida resident and is a party to the lease. Hertz is the other party to the lease and does its relevant business in Florida. Florida is the situs where the lease was executed. In short, Florida, not Texas, has the most significant relationship to the issue of Hertz's vicarious liability". *Id.* at 465.

3

Accordingly, our court held the district court had erred in applying Texas law to the issue of Hertz' vicarious liability. It vacated that ruling and remanded for the district court to determine, under Florida law, Hertz' liability *vel non* for the judgment against Creamer. *Id.* at 466.

The district court was instructed to "focus particularly on whether the Florida law of vicarious liability may be applied to benefit non-Florida residents in a situation such as the case at hand", *id.*, in which the non-Florida resident was *not* injured in Florida. In that regard, the district court was advised it likely would have to make an *Erie* guess to determine the issue, "as no Florida precedent exists to resolve the question". *Id.*

Following remand, Mr. Cates died in 2006; his wife continued as the real party in interest to the litigation as the representative of her husband's estate. In October 2006, Mrs. Cates filed a motion for judgment, seeking to have Florida's dangerous instrumentality doctrine applied to non-Florida residents injured outside Florida, and, accordingly, to have Hertz held jointly and severally liable. Hertz filed a cross-motion for judgment that December, contending Florida courts would not apply the dangerous instrumentality doctrine when the plaintiff was an out-of-state resident not injured in Florida.

In 2008, the district court granted Cates' motion, denied Hertz', and held Hertz jointly and severally liable for the 2002 judgment against Creamer. Noting that "choice of law is no longer an issue before this Court", *Cates v. Creamer*, No. 7:00-CV-0121, 2008 WL 495710, at *2 (N.D. Tex. 25 Feb. 2008) (unpublished), the district court, in an exhaustive and well-reasoned opinion, addressed the specific remand issue framed by our court and, in making its *Erie* guess, ruled that "the Florida supreme court would apply its dangerous instrumentality doctrine in a situation such as the case at hand". *Id.* at *8.

In so doing, the district court noted the clear policy behind Florida's dangerous instrumentality doctrine, as stated by the Florida Supreme Court:

"[The doctrine] is premised upon the theory that one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation". *Kraemer v. Gen. Motors Acceptance Corp.*, 572 So. 2d 1363, 1365 (Fla. 1990). Although recognizing a few statutory and court-created exceptions, as a general rule, the doctrine enforces the principle that, "the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent". *Meister v. Fisher*, 462 So. 2d 1071, 1072 (Fla. 1984) (quoting *Jordan v. Kelson*, 299 So. 2d 109, 111 (Fla. Dist. Ct. App. 1974)).

In making its *Erie* guess, the district court carefully analyzed various sources, appropriately turning to two decisions from other jurisdictions with particular instructive value to the case at hand–*Stathis v. Nat'l Car Rental Sys., Inc.*, 109 F. Supp. 2d 55 (D. Mass. 2000), and *Erickson v. Hertz Corp.*, No. 05-1690, 2006 WL 1004385 (D. Minn. 17 Apr. 2006) (unpublished)–as well as several analogous Florida Supreme Court and Florida appellate court decisions whose rationales and analyses with regard to related issues provided useful guidance. After examining the dangerous instrumentality doctrine with the aid of these decisions, the district court noted that, with respect to the instant facts:

> Creamer was authorized by Hertz to operate the vehicle outside of Florida. Florida's implementation of the dangerous instrumentality doctrine was premised upon the idea that it is in the interest of justice to have the lessor/owner shoulder any financial responsibility caused by the vehicle's misuse. . . . Allowing the lessor to escape liability in situations where the lessee takes the vehicle outside of Florida and injure[s] a non-Florida resident seems contrary to the intent and concerns expressed by the Florida supreme court.

*Cates*, 2008 WL 495710, at *8.

Accordingly, having conducted a thorough *Erie* analysis, the district court held: "[W]here the rental transaction is entered into in Florida, the parties to the contract have ties to Florida, and where the terms of the agreement necessitate travel on Florida roads, the Florida supreme court would apply its dangerous instrumentality doctrine to benefit a non-resident". *Id.*

## II.

Hertz contends the district court erred by extending Florida's dangerous instrumentality doctrine to this action. It maintains the public policy of Florida is concerned only with the protection of Florida residents and visitors to Florida. It asserts that, at the very least, this issue should be certified to the Florida Supreme Court.

In the alternative, Hertz contends that, even if Florida's dangerous instrumentality doctrine applies, this court should reverse and remand this action for trial, because: Hertz did not participate in the jury trials of the Creamers and, therefore, never had the opportunity to defend itself with respect to any issues of vicarious liability under Florida law; and, as a result of Mr. Cates' death in 2006, the circumstances underlying the 2002 judgment for future damages against Creamer changed substantially between that trial and the 2008 judgment against Hertz.

## A.

The district court's determination of Florida law, based on its *Erie* analysis, is reviewed *de novo*. *E.g., Am. Reliable Ins. Co. v. Navratil*, 445 F.3d 402, 404 (5th Cir. 2006). Cates, of course, maintains the district court was correct in determining the Florida Supreme Court would apply the dangerous instrumentality doctrine to the instant action, especially in the light of the choice-of-law analysis performed by our court in the prior appeal having determined Florida's interest in having its law applied. Therefore, Cates opposes certification.

6

Essentially for the reasons stated in the district court's well-reasoned and thorough opinion, we hold Florida courts would apply the dangerous instrumentality doctrine in this instance.

Although not discussed in the district court opinion, the Creamers' explicitly informing the Hertz representative who rented their automobile that they would be driving without stopping for 24 hours lends further support to that court's conclusion. As noted *supra*, the principle behind the dangerous instrumentality doctrine is that one who owns an instrumentality "capab[le] of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent". *Meister*, 462 So. 2d at 1072 (quoting *Jordan*, 299 So. 2d. at 111). Allowing the Creamers to operate the rental vehicle, while knowing they would be doing so in a manner in which the risk of negligence or misuse was increased, only strengthens the holding that the dangerous instrumentality doctrine is applicable in this action.

Further, with the passage in August 2005 of the Graves Amendment, 49 U.S.C. § 30106, which applies only prospectively, 49 U.S.C. § 30106(c), Florida courts will seldom confront this issue in the future. The Graves Amendment preempted state law in the area of vicarious liability for owners engaged in the business of renting or leasing motor vehicles, absent a showing of negligence or criminal wrongdoing on the part of the owner. *See Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1253 (11th Cir. 2008) (holding that the Graves Amendment is a permissible exercise of Congress' Commerce Clause powers under the Constitution in affirming the district court's judgment that the amendment preempted all vicarious-liability claims against the lessor, a Florida rental-car company, in an action in which the company was neither negligent nor criminally liable for the lessee's automobile accident). Generally, for future incidents similar to the instant action, federal law will apply.

Of course, infrequency of future occurrence is not a determinative factor in a court's *Erie* analysis; but, it does mean that our decision likely will not influence any developing Florida law on this issue, because there will be little, if any, future development. This, combined with Hertz' being on notice the Creamers were more likely to operate the automobile negligently, given their stated travel plans, provides additional support for the district court's already well-reasoned analysis holding the dangerous instrumentality doctrine applies in this instance. Accordingly, Hertz' alternative certification request is also denied.

## B.

In contending that, if the dangerous instrumentality doctrine applies, our court should nonetheless remand to allow Hertz the opportunity to defend itself under Florida law, Hertz presents two claims: (1) in the underlying trial in 2002, Cates never proved Hertz knowingly gave consent to Mr. Creamer to drive the automobile–rented in Mrs. Creamer's name–as Hertz claims is required under the dangerous instrumentality doctrine; and (2) Mr. Cates' having died in 2006, the district court abused its discretion by entering judgment against Hertz for the future damages awarded in the 2002 trial. Regarding the second claim, Hertz maintains the future-damages award was based upon the estimate that Mr. Cates would live for another ten to 15 years.

## 1.

Hertz maintains judgment cannot be entered against it without remanding for a new trial, because Cates never proved in the 2002 trial, *as against Hertz*, that Hertz knowingly gave consent to Mr. Creamer to drive (instead, Cates claimed this while proving the negligence claim against the Creamers). In this regard, as discussed *supra*, because Hertz had been dismissed, it did not participate in that trial.

Hertz admitted in its summary-judgment motion, however, that "it owned the [rented vehicle] at the time of the incident at issue and that it had rented the vehicle to Mrs. Creamer in Panama City". Under Florida law, as discussed below, that is sufficient to establish knowledge and consent for purposes of vicarious liability, even if Mr. Creamer was not specifically mentioned in the rental contract.

In *Susco Car Rental System of Florida v. Leonard*, 112 So. 2d 832, 835-36 (Fla. 1959), the Florida Supreme Court held: "[W]hen control of [] a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its misuse". Later, in *Kraemer*, the Florida Supreme Court affirmed that *Susco* extended the dangerous instrumentality doctrine "to hold the lessor responsible for damages resulting from the operation of the vehicle by someone other than the person to whom it was rented even though the operation was contrary to the express terms of the lease". 572 So. 2d at 1365.

Accordingly, in the light of Hertz' admission in its summary-judgment motion that it had rented the vehicle to Mrs. Creamer, and without any allegation, much less evidence, that Mr. Creamer stole the vehicle, the requisite factual basis was established for applying the dangerous instrumentality doctrine to Hertz before its summary-judgment dismissal.

Moreover, Hertz' non-participation in the trial was entirely a consequence of its own actions. It opted to seek dismissal before trial, rather than litigate, at trial, the issue of its vicarious liability. It cannot now, after years of litigation, receive a second bite at the apple, especially when the requisite facts to find it vicariously liable were established before its dismissal.

Also of note is that the district court's mandate on remand was to decide only the legal question of whether the dangerous instrumentality doctrine would

apply in a situation such as the one at hand. The district court, accordingly, did not err in entering judgment against Hertz once it found the doctrine did apply.

2.

Hertz contends the district court abused its discretion by entering judgment against it for the damages awarded at the 2002 trial. It rests this on Mr. Cates' death in 2006, and the damages estimate in the 2002 trial having been based on his life expectancy of between ten to 15 years. To this end, Hertz filed a Rule 59(e) Motion to Alter or Amend Judgment, contending that, with this "important factual development" and "change of circumstances", it would be clear error and manifestly unjust to hold it liable for the full judgment.

The district court recognized correctly that a Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment", *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004), but rather, it "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence", *id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Accordingly, the district court denied the motion because: (1) Hertz neglected to raise this damages contention until its reply brief in a round of supplemental briefing on the cross-motions for judgment; (2) Mr. Cates' death was not "newly discovered evidence", as Mrs. Cates filed her motion of substitution and suggestion of death on 23 October 2006, and Hertz did not raise this issue until 30 August 2007; and (3) there was no manifest error to correct, because:

> To hold that a plaintiff's death following a jury verdict is the sort of "substantial injustice" requiring the reopening of cases or award of new trials . . . would be to invite a morass of appeals from defendants in cases where the plaintiffs did not survive an "acceptable" amount of time following the entry of judgment. . . . The fact that a plaintiff dies even a second after judgment is entered

does not render evidence regarding an *expected* life span "false" nor the judgment invalid.

*Cates v. Creamer*, No. 7:00-CV-0121-O (N.D. Tex. 27 June 2008) (Order Denying Motion to Alter, Amend, or Vacate Judgment ) (quoting *Davis by Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 135 (2d Cir. 1990) (emphasis in original)).

The denial of a Rule 59(e) motion is reviewed for abuse of discretion. *E.g., Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 247 (5th Cir. 2006). The ruling should not be disturbed unless the district court "clearly abused its discretion in determining that [the] motion neither established a manifest error of law or fact nor presented newly discovered evidence". *Id.*

The district court thoroughly analyzed whether Hertz' motion presented newly discovered evidence or established manifest error on the basis of Mr. Cates' death. Essentially for the reasons stated in its well-reasoned denial of the motion, the district court did *not* abuse its discretion in so ruling.

III.

For the foregoing reasons, the judgment is AFFIRMED.