753 So.2d 60 (2000)
Michael AURBACH, et ux., Petitioners,
v.
Angelina GALLINA, et al., Respondents.
No. SC94597.
Supreme Court of Florida.
February 3, 2000.
*61 Dan W. Moses, Boca Raton, Florida; and Nancy Little Hoffmann, Fort Lauderdale, Florida, for Petitioners.
Angela C. Flowers and Caryn Bellus-Lewis of Kubicki Draper, Miami, Florida, for Respondents.
PARIENTE, J.
We have for review Aurbach v. Gallina, 721 So.2d 756 (Fla. 4th DCA 1998), on the basis of express and direct conflict with Frankel v. Fleming, 69 So.2d 887 (Fla. 1954). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS
Michael Aurbach, petitioner, was injured in an automobile accident by a motor vehicle operated by Angelina Gallina, age eighteen. Aurbach and his wife sued Angelina as the operator of the motor vehicle and her parents, Louis and Carolina Gallina (the Gallinas). Although the motor vehicle was titled in the name of Carolina Gallina, the Aurbachs also sought to hold Louis Gallina vicariously liable under the dangerous instrumentality doctrine, alleging that he owned or had the right to control the motor vehicle driven by his daughter. Although the Gallinas admitted Angelina's liability and did not contest Carolina's vicarious liability, Louis Gallina contended that he could not be held liable for the negligent operation of an automobile owned by his wife and driven by his daughter with his wife's permission. Louis Gallina claimed he was not the owner of the vehicle, as required by the dangerous instrumentality doctrine.
The sole evidence presented by the Aurbachs at trial on the issue of Louis Gallina's liability was that
[t]he car was purchased with Louis and Carolina's joint funds. Before buying the car, the Gallinas test drove it together. The car was purchased with the intent that the Gallinas' other daughter, Caroline, be the primary user, but that both of their daughters would be allowed to drive it. The expenses to maintain the car were paid out of the Gallinas' joint account. The Gallinas kept the automobile at the home where both of them resided.
Id. at 759. It was undisputed that Angelina had her mother's permission to use the vehicle on the day of the accident.
By special interrogatory on the verdict form, the jury found that "Louis Gallina owned or had the right to control the vehicle driven by his daughter, Angelina, at the time of the accident and that Angelina had her father's express or implied consent to drive it."[1]Aurbach, 721 So.2d at 758. After trial, Louis Gallina moved for judgment in accordance with his motion for directed verdict, which the trial court granted. See id.
On appeal, the Fourth District affirmed the trial court after concluding that liability under the dangerous instrumentality doctrine is imposed only where there has been an "identifiable property relationship between a defendant and a motor vehicle." Id. at 759. In doing so the Fourth District concluded:
In the context of family relationships, the better rule is to have legal responsibility follow title ownership, a bright line standard which makes liability under the dangerous instrumentality doctrine both foreseeable and predictable. To analyze family dynamics to determine all the "beneficial" owners of a car is to impose a fuzzy legal standard that will encourage litigation and potentially expand liability beyond that which is justified by the rationale for the rule.

*62 In this case, Louis Gallina was not an owner, bailee, or lessee of the automobile sufficient to impose liability under the dangerous instrumentality doctrine. He did not put the car in the possession of a non-family member. Angelina Gallina's operation of the car on the date of the accident was with the permission of the title owner, her mother Carolina. Under the facts of this case, the trial court did not err in granting Louis Gallina's motion in accordance with his motion for directed verdict.
Id.
The issue before this Court is whether the dangerous instrumentality doctrine extends to hold a parent vicariously liable for an accident caused by a child's negligent operation of a motor vehicle where the parent purchased the vehicle for his or her child, paid for the motor vehicle's maintenance, and had a general right to control the operation or use of the vehicle as the child's parent, even though the parent did not hold legal title to the vehicle. We conclude as a matter of law that these circumstances, without more, do not give rise to vicarious liability under the dangerous instrumentality doctrine.

ORIGIN OF DANGEROUS INSTRUMENTALITY

DOCTRINE IN FLORIDA
Adopted in 1920, Florida's dangerous instrumentality doctrine imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another. See Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 468, 86 So. 629, 637 (1920). As expressed in Southern Cotton Oil:
[O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
Id. at 638. Under the dangerous instrumentality doctrine, an owner who gives authority to another to operate the owner's vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated safely. See Hertz Corp. v. Jackson, 617 So.2d 1051, 1053 (Fla.1993).
Seventy years after this Court issued its opinion in Southern Cotton Oil, Justice Grimes, writing for the Court, reaffirmed the viability of the dangerous instrumentality doctrine and the important policies that led to its adoption in Florida:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways. The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions.
Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990) (footnote omitted).

IDENTIFIABLE PROPERTY INTEREST
In determining who is vicariously liability under the dangerous instrumentality doctrine, this Court repeatedly has required that the person held vicariously liable have an identifiable property interest in the vehicle, such as ownership, bailment, rental, or lease of a vehicle. See, e.g., Kraemer, 572 So.2d at 1364-67. The most common application of the dangerous instrumentality doctrine is where the legal title holder is held vicariously liable for the *63 negligent operation of a motor vehicle. See Kraemer, 572 So.2d at 1363-67; Metzel v. Robinson, 102 So.2d 385 (Fla.1958). In Southern Cotton Oil, the motor vehicle owned by the Southern Cotton Oil Corporation was being operated by an employee with the express or implied permission of the owner. 86 So. at 636. Thus, when that employee operated the motor vehicle negligently, we found Southern Cotton Oil vicariously liable under the dangerous instrumentality doctrine. See id.
Thereafter, the Court extended vicarious liability to the owner of a vehicle acting as a lessor or bailor for the negligent operation of the vehicle by the lessee or bailee. See Susco Car Rental System v. Leonard, 112 So.2d 832, 835-36 (Fla.1959); Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, 271 (1947), overruled in part on other grounds by Meister v. Fisher, 462 So.2d 1071 (Fla. 1984). In Lynch, the Court held that when owners authorize other individuals to use their vehicles, they are liable for the damages that the other authorized drivers negligently cause to third parties. 31 So.2d at 271. Likewise, in Susco Car Rental, the Court extended the ownerlessor's vicarious liability further to situations where the vehicle was operated by one other than the authorized lessee in violation of the terms of the lease. 112 So.2d at 835-36; see also Kraemer, 572 So.2d at 1364-67 (owner of vehicle under long-term lease liable under the dangerous instrumentality doctrine for the negligence of driver of vehicle).[2]
In addition to holding owners vicariously liable, the Court has also recognized the vicarious liability of lessees and bailees of motor vehicles who authorize other individuals to operate the motor vehicles. See Frankel, 69 So.2d at 888. However, whether an entity or individual is vicariously responsible as a bailee for the negligent operation of a motor vehicle may be a fact-based inquiry. See Brown v. Goldberg, Rubenstein & Buckley, P.A., 455 So.2d 487, 488 (Fla. 2d DCA 1984). Thus, this Court's prior cases have recognized a variety of identifiable property interests that might give rise to vicarious liability under the dangerous instrumentality doctrine.

"BARE" LEGAL TITLE VERSUS BENEFICIAL OWNERSHIP
Legal title remains the most common basis for imposing vicarious liability under the dangerous instrumentality doctrine. However, a narrow exception for the legal title owner to escape vicarious liability has been recognized where the holder of "mere naked title" is able to demonstrate the absence of beneficial ownership of the vehicle. In Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635, 637 (Fla.1955), this Court first explained that "mere naked title" could repose in one entity but "beneficial ownership" in another.
In Palmer, a man agreed to buy a motor vehicle from a used-car dealer, made a down payment, signed a conditional sales contract and a power of attorney, then drove the car out of the lot. 81 So.2d at 636. Shortly thereafter, he became involved in an accident in which a third party was injured. Both the car dealer and the driver considered the purchase closed when possession of the automobile was delivered. However, the transaction was not memorialized in writing until the conditional sales contract was signed a few days after the accident. In upholding the jury's determination that the car dealer was not vicariously liable, the Court explained that
the rationale of our cases which impose tort liability upon the owner of an automobile operated by another ... would *64 not be served by extending the doctrine to one who holds mere naked legal title as security for payment of the purchase price. In such a titleholder, the authority over the use of the vehicle which reposes in the beneficial owner is absent.

Id. at 637 (emphasis supplied); see also Smith v. Baker, 206 So.2d 409, 412 (Fla. 4th DCA 1968). Thus, an entity or individual who complies with the statutory requirements of the conditional sales statute may be exempt from vicarious liability, even though the entity retains legal title to the vehicle as security for the payment of the purchase price.[3]See Kraemer, 572 So.2d at 1365; Rutherford v. Allen Parker Co., 67 So.2d 763 (1953).
In Metzel v. Robinson, 102 So.2d 385, 385-86 (Fla.1958), the Court made it clear that, absent a conditional sales agreement, the circumstances where an entity or individual who possessed legal title would not be vicariously liable under the dangerous instrumentality doctrine were extremely limited. In Metzel, a nephew caused injuries to the plaintiff by negligently operating a motor vehicle, which was titled in his aunt's name. See id. at 385. The plaintiff sued the aunt, the record title holder of the vehicle, under the dangerous instrumentality doctrine. See id. According to the facts, the aunt had taken title to the vehicle only to assist her nephew in purchasing and financing the vehicle. See id. The nephew took possession of the vehicle after its purchase, and the aunt had nothing more to do with the vehicle. See id. Nevertheless, because the aunt took no action to divest herself of title to the car, the Court determined that she was the "owner" of the automobile as a matter of law. See Metzel, 102 So.2d at 385-86. In making this determination, the Court further explained that the aunt was "still in a position to exert some dominion and control over the vehicle." Id. at 386 (emphasis supplied). Thus, because the aunt held title to the vehicle and could exercise dominion and control over the vehicle, the Court concluded as a matter of law that the aunt would be held vicariously liable under the dangerous instrumentality doctrine. See id. at 386.
The Second District in Marshall v. Gawel, 696 So.2d 937, 938-39 (Fla. 2d DCA 1997), also examined the dangerous instrumentality doctrine in the context of a family relationship. Similar to Metzel, the issue in Marshall was whether the legal title holder of a motor vehicle could be held vicariously liable under the dangerous instrumentality doctrine. See id. In Marshall, the defendant mother was the legal title holder of the vehicle, although she merely signed as a coguarantor to help her daughter obtain the necessary financing to purchase the vehicle. See id. at 938. After the defendant mother's husband negligently drove the vehicle and injured the plaintiff, the plaintiff sought to hold the mother accountable under the dangerous instrumentality doctrine. See id. However, the mother claimed that even though the vehicle was titled solely in her name, she was not liable under the dangerous instrumentality doctrine because she: (1) did not pay for the vehicle, its insurance, or its maintenance; (2) never drove the vehicle or had keys to it; and (3) had no authority or control over the vehicle's use. See id.
The Second District explained that "[t]he parties' intent regarding who would have beneficial ownership must be determined from their overt acts." Marshall, 696 So.2d at 939. According to the Second District, the fact that the mother was the registered owner of the vehicle, did not take steps to divest herself of title, had insurance on the vehicle, and resided together *65 with her daughter could indicate that she had "the ability to exert some dominion or control over the vehicle." Id. (emphasis supplied). Therefore, the Second District concluded that the record reflected a genuine issue of material fact as to the mother's vicarious liability as the owner of the vehicle. See id.
The statements in Marshall must be read in the context of the facts of that opinion. In both Metzel and Marshall the legal title holders were attempting to avoid liability under the dangerous instrumentality doctrine by asserting that another individual was the actual "beneficial" owner. In neither Metzel nor Marshall, however, did the courts hold that the ability to exert some degree of dominion and control constitutes an independent basis for vicarious liability under the dangerous instrumentality doctrine absent an identifiable property interest in the vehicle.

VICARIOUS LIABILITY OF PARENTS FOR THEIR CHILDREN'S TORTS
Petitioners admit that no prior case in Florida has extended the dangerous instrumentality doctrine to hold a parent liable for a child's negligent operation of a motor vehicle where the vehicle was not titled in the parent's name and where there was no indication that the parent was the intended owner of the vehicle. In fact, in a case with similar factual circumstances to Aurbach, the Third District rejected such an extension of the dangerous instrumentality doctrine. See Wilsen v. Lesser, 434 So.2d 1033 (Fla. 3d DCA 1983).
In Wilsen, the father purchased a vehicle for his eighteen-year-old daughter, who resided with her parents. See id. at 1033. The motor vehicle was titled in the daughter's name. A friend of the daughter's negligently drove the vehicle and crashed into plaintiff's vehicle. See id. The plaintiff brought suit against the daughter's father "on the theory that he bought the automobile for his daughter, who resided at home with her parents, and that he exercised some control over its operation." Id. The Third District upheld the granting of a summary judgment in favor of the father, concluding there was no genuine issue of material fact on the issue of vicarious liability. See id. Although no further facts are set forth in the opinion, the Third District's opinion, like the Fourth District's opinion in Aurbach, holds as a matter of law that the fact that a parent buys a motor vehicle for a child who resides at home and exercises some control over the operation of the motor vehicle is insufficient by itself to impose vicarious liability under the dangerous instrumentality doctrine. See Wilsen, 434 So.2d at 1033.
Further, under existing Florida statutory law, there is only one instance where a parent can be held vicariously liable for his or her child's negligent operation of a motor vehicle absent an identifiable property interest in the vehicle, such as ownership, rental, lease, conditional sale or bailment. Pursuant to section 322.09(2), Florida Statutes (1997), the parent who signs the driver's license application for a minor child can be held vicariously liable for the child's negligent operation of a motor vehicle. This responsibility ends, however, when the child reaches the age of majority. See id.

THIS CASE
Here, it is undisputed that: (1) Louis Gallina was neither the legal title holder, beneficial owner, nor bailor of the vehicle; (2) Carolina Gallina, as the legal title owner, admitted her vicarious liability as the vehicle's owner under the dangerous instrumentality doctrine; and (3) Angelina Gallina was over the age of majority at the time of the accident. The jury determined that Louis Gallina had the right to control the vehicle. However, the Aurbachs presented no facts to support a finding that Louis Gallina had the right to control his adult daughter's use of the vehicle other than an inference to be drawn from the *66 fact that he was her father.[4] Further, the Aurbachs do not contend that, under the facts of this case, Louis Gallina was liable as a bailor of the vehicle.
To apply the dangerous instrumentality doctrine under these undisputed facts would be an improper extension of the doctrine. Contrary to petitioners' position, the concept of beneficial ownership in Florida law has not been an expansive one that extends to hold vicariously liable anyone with a theoretical right to control a motor vehicle. Rather, the concept of beneficial ownership has been narrowly used in cases where the legal title owner is attempting to deny liability, such as the defendants in Palmer, Metzel and Marshall.
We agree with the Fourth District that family dynamics and the parent-child relationship cannot be used as an independent basis for holding parents vicariously liable as beneficial owners of vehicles purchased for their children. See Aurbach, 721 So.2d at 759. In the absence of common law or statutory authority, we hold that a parent who holds neither legal title nor an identifiable property interest in a motor vehicle should not be held vicariously liable for his or her child's negligent operation of the vehicle under the dangerous instrumentality doctrine.
Finally, while we commend the Fourth District for its attempt to simplify this area of dangerous instrumentality law, we disapprove of the opinion to the extent it could be construed to mean that legal title is the only basis for imposing vicarious liability in a family relationship, because this would conflict with our decision in Frankel. Although vicarious liability will generally flow from legal title, this principle does not preclude the imposition of vicarious liability under the dangerous instrumentality doctrine pursuant to other identifiable property interests, including bailment.
Accordingly, we approve of the decision reached by the Fourth District, but we do so for the reasons stated in this opinion.[5]
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD and QUINCE, JJ., concur.
LEWIS, J., recused.
NOTES
[1] The jury was instructed in accordance with Standard Jury Instruction 3.3(a) that: "A person who owns or has the right to control a vehicle and who expressly or impliedly consents to another's use of it is responsible for its operation."
[2] We note, however, that section 324.021(9)(b), Florida Statutes (1997), provides a statutory exception from vicarious liability under the dangerous instrumentality doctrine for owners of motor vehicles leased for one year or longer if there is strict compliance with the express provisions of that statute. See Ady v. American Honda Fin. Corp., 675 So.2d 577, 580 (Fla.1996).
[3] The purpose of the conditional sales statute is to protect sellers of automobiles from vicarious liability for the negligent driving of the purchaser after they have transferred possession of the motor vehicle to the purchaser. In order to receive this protection, the seller must follow the specific requirements set forth in the statute. See § 319.22(2) Fla. Stat. (1997).
[4] In fact, the only testimony was to the contrary. Louis Gallina testified that if he had told his adult daughter, Angelina, that she was not allowed to drive the car, "I don't think she would have listened to me." In addition, his wife, Carolina Gallina, testified that she was in charge of taking care of all the paperwork on the cars and that she gave her daughter, Angelina, permission to use the car that day.
[5] To the extent that Standard Jury Instruction 3.3(a) instructs the jury that either ownership or right to control could give rise to dangerous instrumentality liability, we request that the Civil Standard Jury Instruction Committee consider whether, consistent with existing law, a revision to the jury instruction is necessary.