813 So.2d 162 (2002)
Sabas Flores MORALES and Justina Leone Morales, Appellants,
v.
The COCA-COLA COMPANY, a foreign corporation; Manuel C. McKenzie, individually; Collis Faniel, individually; Faniel Harvesting, Inc., a Florida corporation, Appellees.
No. 4D01-1795.
District Court of Appeal of Florida, Fourth District.
March 13, 2002.
Rehearing Denied April 25, 2002.
*163 Roy D. Wasson of Wasson & Associates, Miami, and Robert E. Gordon of Gordon & Doner, P.A., Palm Beach Gardens, for appellants.
Michael V. Elsberry of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for appellees.
WARNER, J.
This appeal arises from a summary final judgment in favor of The Coca-Cola Company in a negligence action. The court granted summary judgment on the basis that Coca-Cola was not the owner of the *164 vehicle in which appellant was injured, even though Coca-Cola was the record title owner. Because we conclude that the affidavits in support of the motion did not satisfy Coca-Cola's burden of showing the absence of beneficial ownership of the vehicle, we reverse.
According to the allegations of the complaint, Sabas Flores Morales, appellant, was injured when a goat truck he was driving went out of control, ran off the road, and flipped, causing him serious injuries. A goat truck is a vehicle used in the citrus harvesting business. He initially brought suit against Manuel McKenzie and his businesses, claiming that McKenzie owned the truck and that his injuries were the result of McKenzie's negligent maintenance of the vehicle. However, after limited discovery, Morales' counsel learned that Coca-Cola was the record title holder of the vehicle. He thus amended his complaint to add a count alleging that Coca-Cola was the owner of the vehicle, according to the records of the State of Florida. As record title owner, Coca-Cola had a duty to insure that the vehicle was properly maintained and was liable to the plaintiff under the dangerous instrumentality doctrine.[1]
Coca-Cola denied that it owned the vehicle and, pursuant to a motion for summary judgment, filed an affidavit from its former vice president. The vice president stated that he was responsible for the negotiation and sale of The Coca-Cola Florida Grove Properties, including those in St. Lucie County. He attached to the affidavit a copy of the agreement for sale and stated that the purchase took place on December 30, 1993, and all assets used by Coca-Cola in its grove properties were transferred to Running W Citrus Limited Partnership, including all goat trucks. After that date, the company maintained no interest in any of the assets which had been transferred as part of the sale, and Running W took control of all of the assets transferred to it. He concluded by stating that "I am certain that The Coca-Cola Company transferred any interest it had in that vehicle to Running W Citrus Limited Partnership as of December 30, 1993, and exercised no ownership or control over it after that date."
In response, Morales filed records from the State of Florida showing that the vehicle was registered to Coca-Cola, but the registration had expired in 1985. The records also identified Coca-Cola as the owner of the vehicle as recently as March 16, 2001. Nevertheless, the trial court entered summary judgment in favor of Coca-Cola, concluding that the company had rebutted the presumption of ownership created by record title with the affidavit of the vice president which demonstrated that The Coca-Cola Company had transferred its ownership of the vehicle as of December 30, 1993, long before the accident in this case occurred. Morales appeals the judgment.
This case involves Florida's dangerous instrumentality doctrine. The dangerous instrumentality doctrine, as applied to motor vehicles, is unique to Florida. We recently explained the development of the doctrine:
Under Florida's dangerous instrumentality doctrine, the owner of a motor vehicle is liable to third persons for injuries caused by the negligent operation *165 or use of the motor vehicle by the person to whom the owner entrusted the vehicle. See Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 637 (1920). The doctrine is based upon the view that motor vehicles are dangerous instrumentalities when operated upon the public highways; consequently, the owners of motor vehicles are obligated to ensure that their vehicles are properly operated when on the public highway under their authority. See Barth v. Miami, 146 Fla. 542, 1 So.2d 574 (1941). Since adopting the dangerous instrumentality doctrine in 1920, Florida courts have repeatedly applied the doctrine, with very few exceptions. Recently, the Florida Supreme Court reaffirmed the important public policies underlying its adoption. See Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000) (quoting Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla. 1990)). As Justice Grimes wrote in Kraemer:

The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reasons for its application to today's high-speed travel upon crowded highways.
572 So.2d at 1365.
Dockery v. Enter. Rent-A-Car Co., 796 So.2d 593, 596 (Fla. 4th DCA 2001)(footnote omitted). The question of who is liable as an owner under the dangerous instrumentality doctrine continues to be refined by the courts. In Aurbach v. Gallina, 753 So.2d 60, 63 (Fla.2000), the court stated:
Legal title remains the most common basis for imposing vicarious liability under the dangerous instrumentality doctrine. However, a narrow exception for the legal title owner to escape vicarious liability has been recognized where the holder of "mere naked title" is able to demonstrate the absence of beneficial ownership of the vehicle.
The court further noted that absent a sales agreement, the circumstances where an entity holding legal title could disclaim beneficial ownership and not be found vicariously liable were "extremely limited." Id. at 64. Where a defendant contests ownership, in order for the defendant to meet its burden on summary judgment, it must "conclusively show that there [are] no genuine issues of material fact with regard to their ownership" of the vehicle or their consent to its use. Medina v. Yoder Auto Sales, Inc., 743 So.2d 621, 622 (Fla. 2d DCA 1999).
Coca-Cola grounded its denial of beneficial ownership on the fact that it had sold the goat truck to Running W in the global sale of its citrus business pursuant to the Agreement of Sale dated December 30, 1993. However, the terms of the Asset Purchase Agreement are in conflict with the statements in the affidavit. The Asset Purchase Agreement states:
1. Description of Subject Assets: The assets which are the subject of this Agreement (all of which shall hereinafter collectively be referred to as the "Subject Assets") consist of the following, to wit:
(e) Equipment. All equipment, machinery, apparatus, tools, implements, spare parts and other items of tangible personal property owned by Seller *166 which belong, pertain or are related to or used or intended to be used predominantly for or in connection with or support of Seller's Grove Business, consisting of the radio transmission equipment and other items listed and described on the Schedule of Equipment attached as Exhibit B to this Agreement (hereinafter collectively referred to as the "Equipment"); excluding, however, Seller's entire over-the-road fruit hauling fleet vehicles as the same are described on the Schedule of Seller's Fleet Vehicles attached as Exhibit C to this Agreement.
(Emphasis added). The parties agree that the goat truck in question was not listed on Exhibit B, even though other goat trucks were listed. The agreement also provided:
2. Excluded Assets. The Subject Assets do not include the following assets (hereinafter referred to as the "Excluded Assets"): (i) Seller's over-the-road fruit hauling fleet vehicles as listed in Exhibit C, (ii) the 42 boxes of excluded records described in Paragraph 1(h), (iii) all contracts, equipment leases and other leases to which Seller is a party not included in the Contracts and the Equipment Leases, (iv) all licenses and permits held by Seller not included in the Licenses and Permits, (v) the Excluded Administrative Systems and Facilities and (vi) any and all other assets of Seller not listed in Paragraph 1 as being a part of the Subject Assets.

(Emphasis added). Furthermore, the agreement provided that, as soon after the closing as was practicable, the purchaser would deliver to the Department of Motor Vehicles the title certificates for the motor vehicles included in the sale. From the date of the closing, the purchaser agreed to be liable for all claims of personal injury and death incident to the ownership and operation of such vehicles.
While the affidavit states that the goat truck was transferred as part of Coca-Cola's grove business, the purchase agreement states that all of the seller's other assets not listed in paragraph 1 were excluded from the sale. As the goat truck was not listed in Exhibit B to the purchase agreement, it was, according to the written agreement, an excluded asset. Because the affidavit is inconsistent with the purchase agreement as to the sale of the goat truck, a question of fact remains as to whether the goat truck was included. Cf. Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 305 n. 7 (Fla. 4th DCA 1995).
Coca-Cola had the burden of proving the absence of beneficial ownership in the goat truck, and it has not satisfied that burden because the vice president's affidavit does not sufficiently rebut the presumption of ownership which arises from legal title.[2] If Running W had filed an affidavit agreeing that this particular goat truck was part of the sale and had been mistakenly omitted, and that it had taken possession and control of the truck, then Coca-Cola would have proved that its bare legal title was not accompanied by beneficial ownership. However, the affidavit of the Coca-Cola executive does not even state that Running W took control and possession of this particular goat truck. It merely states that the Running W took possession of the assets transferred to it. Given the fact that the truck's vehicle registration had not been renewed since 1985, it seems to us an *167 eminently reasonable inference that this truck was not part of the sale in 1993.[3] There remains a genuine issue of fact as to whether Coca-Cola transferred beneficial ownership of the goat truck.
Alternatively, Coca-Cola argues that the dangerous instrumentality doctrine does not apply to the negligent maintenance of a vehicle. We do not reach that point because there is nothing in the record regarding the facts surrounding the negligent maintenance claim. Because Coca-Cola has legal title to the vehicle and the facts are disputed as to beneficial ownership, including the right of control, determining this alternate issue without a factual predicate is premature.
Reversed and remanded.
ROBY, WILLIAM L., Associate Judge, concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
Unless I am greatly mistaken as to the facts, which Coca Cola has not troubled itself to make adequately clear, the real problem in this case is that this "goat" may have been individually sold to someone (I do not know who) before the general asset sale to Running W Citrus. That may explain why it was not included in all the detailed papers of the asset sale. Yet that fact does nothing to crystallize why Coca Cola is not still responsible for the goat as the record title holder under the dangerous instrumentality doctrine. Thus I concur in the reversal.
NOTES
[1] Parties are entitled to allege alternative inconsistent facts or theories in their pleadings. See Booker v. Sarasota, Inc., 707 So.2d 886, 888 (Fla. 1st DCA 1998). In this case, Morales is obviously unsure as to who the responsible owner is, and he is entitled to make allegations as to both and have a jury determine the issue, if the matter is not resolved by summary judgment.
[2] The parties agree that a rebuttable presumption of ownership arises from possessing legal title. See Sterling v. Gov't Employees Ins. Co., 600 So.2d 14, 16 (Fla. 5th DCA 1992).
[3] Indeed, it may be that the truck was sold earlier than 1993 to another party who never transferred title. Or, Coca-Cola may have authorized a third party to use the truck and then forgot that the party had possession at the time of the 1993 sale.