SAWAYA, J„
dissenting.
I concur in the well-reasoned dissent by Judge Grifñn. I write to more fully explain my views regarding the issues raised by the parties in this appeal and the majority en banc opinion.
The jury returned a verdict specifically finding that Robert L. Christensen was not an owner of the PT Cruiser driven by his ex-wife that was involved in the accident that caused the death of the decedent. In order to overcome that finding in the verdict and establish liability against Robert under the dangerous instrumentality doctrine, Appellant contends that the trial court erred in failing to grant her motion for directed verdict on the issue of Robert’s ownership of the vehicle. Appellant argues that the motion should have been granted as a matter of law because Robert’s name was on the certificate of title and he did not have his name removed from it prior to the accident.[14]
In Aurbach v. Gallina, 753 So.2d 60 (Fla.2000), the court held that “[ljegal title remains the most common basis for imposing vicarious liability under the dangerous instrumentality doctrine. However, a narrow exception for the legal title owner to escape vicarious liability has been recognized where the holder of ‘mere naked title’ is able to demonstrate the absence of beneficial ownership of the vehicle.” Id. at 63. The court noted that the standard jury instructions regarding the dangerous instrumentality doctrine should be revised to reflect existing law. Specifically, the court stated, “To the extent that Standard Jury Instruction 3.3(a) instructs the jury that either ownership or right to control could give rise to dangerous instrumentality liability, we request that the Civil Standard Jury Instruction Committee consider whether, consistent with existing law, a revision to the jury instruction is necessary.” Id. at 66 n. 5 (emphasis added). The Florida Supreme Court subsequently adopted a revised standard jury instruction to make it clear that an owner is an individual who has both legal title and beneficial ownership of the vehicle. Specifically, in In re Standard Jury Instructions — Civil Cases (No. 02-1), 828 So.2d 377, 382-83 (Fla.2002), the court revised Florida Standard Jury Instruction (Civil) 3.3(a) to provide, “An owner of a vehicle is one who has legal title to the vehicle and who has the right of control and authority over its use.” Id. at 382 (emphasis added).[15]
The majority latches on to the word “narrow” used by the court in Aurbach to argue that the exception is confined only to cases where there is an incomplete transfer of title to the vehicle or where a conditional sale occurs. I do not believe that *155 the court meant the exception to be that narrow or constricted. Judge Griffin’s dissent fully explains why gift of the vehicle is another valid exception, and I will not repeat that analysis here. I do find it interesting that the Note on the use of the revised instruction indicates that a number of exceptions exist and explains that “[o]ther exceptions may exist for which special instructions may be required. See generally 4A Fla. Jur.2d, Automobiles and Other Vehicles, §§ 667-91. The instruction may also have to be tailored to fit the particular factual circumstances of the case.” Id. at 383. Other exceptions may certainly exist and a gift of the vehicle is one of them. See Plattenburg v. Dykes, 798 So.2d 915, 916 (Fla. 1st DCA 2001) (“Here, the undisputed facts of record show a gift from Evans to Dykes.”).
The jury instruction given in the instant case states, “An owner of a vehicle is one who has legal title to the vehicle and who has a beneficial ownership with the right of control and authority over its use.” This instruction is closely patterned after the standard instruction, and Appellant raises no challenge to this instruction on appeal. Appellant’s primary argument centers on Robert’s testimony that he gifted the car to his estranged (soon to be ex) wife and therefore he had no beneficial ownership of it at the time of the accident. Specifically, Appellant argues that the testimony is immaterial and insufficient. Based upon that argument, Appellant contends that the motion for directed verdict should have been granted because there was no reasonable evidence upon which a jury could predicate a verdict that Robert was not the owner of the vehicle. Despite the fact that there was no objection raised to Robert’s testimony in the trial proceedings, the majority has fully embraced that argument, which is based on the following language in Johnson v. Deangelo, 448 So.2d 581 (Fla. 5th DCA 1984):
Her subjective intent or reason or motive in causing her name to be placed on the title certificate was legally immaterial and, accordingly, her testimony was insufficient as a matter of law to rebut the legal presumption arising from the motor vehicle title certificate itself and insufficient to avoid the legal consequences of that fact.
Id. at 582.
The court in Deangelo simply held that the mother’s subjective intent in placing her name on the certificate of title was immaterial and therefore insufficient to overcome the presumption of legal ownership that flows from her name being on the title. Evidence is immaterial when it is offered to prove a fact that is not a matter in issue in the case.[16] The opinion does not mention that the mother made any argument that she did not have beneficial ownership of the vehicle and that is apparently why the court believed the testimony was immaterial. Whether a matter is an issue is generally determined by the pleadings. Charles W. Ehrhardt, Florida Evidence § 401.1 at 133-34 (2007 ed.). Here, Robert’s lack of beneficial ownership was specifically pled in the answer and was argued to the trial court, the jury, and to this court on appeal. Moreover, rather than testify why he put his name on the *156 certificate of title, Robert testified what he intended to do with the car, which was to make a gift of it to his estranged wife in the hopes of reconciling with her. In Ferrari Engineering Group, Inc. v. Reid, 600 So.2d 1307 (Fla. 5th DCA 1992), this court affirmed a jury instruction given by the trial court telling the jury that intent is a relevant factor for it to consider in determining the issue of beneficial ownership. Specifically, this court stated that it was proper to instruct the jury that “[t]he name shown on the certificate of title is not conclusive proof of beneficial ownership, but is one factor you should consider.” Id. at 1308. In addition to the intent of the parties, other factors the court held were proper for the jury to consider when determining beneficial ownership include which party had possession of the vehicle and which party had control and authority over the use of the vehicle. Intent is as relevant a factor for the jury to consider in cases involving a gift as it is in cases involving an incomplete transfer of title or a conditional sales agreement. I therefore reject the argument that Robert’s testimony regarding the issue of beneficial ownership is immaterial under the holding of Deangelo.
Moreover, the court in Deangelo held that the testimony was insufficient to overcome the presumption of ownership established by the certificate of title. The presumption of ownership created by the certificate of title is a rebuttable presumption as Deangelo and other cases have held, which means that the presumption disappears when evidence is presented to rebut it. See Sterling v. Gov’t Emps. Ins. Co., 600 So.2d 14 (Fla. 5th DCA), review denied, 613 So.2d 4 (Fla.1992). As to whether the evidence was sufficient to overcome that presumption, in addition to Robert’s testimony that he gifted the car to Mary, unlike Deangelo, there was other evidence presented regarding the beneficial ownership issue that was not based on Robert’s subjective intent. That uncontra-dicted evidence includes the following:
1. From the date of purchase until the accident some two years later, Mary Taylor-Christensen had sole and exclusive possession, custody, and control over the vehicle;
2. From the time of purchase until the accident some two years later, Robert never possessed the vehicle or had control of it;
3. Robert lived several hundred miles away from Mary’s residence where the car was kept and he did not have access to the vehicle, drive it, or in any way possess the vehicle for the two-year period;
4. Robert did not have keys to the vehicle and even if he did, he could not have taken possession or control over it because it was securely kept in a gated condominium garage where Mary lived;
5. The vehicle was purchased at a time when Robert and Mary were divorcing (they were awaiting the entry of the final judgment) and any attempts at reconciliation and reunion had failed;
6. Robert never purchased insurance for the vehicle;
7. Robert never registered the vehicle;
8. The address placed on all of the purchase documents, including the application for certificate of title, was Mary’s address; and
9. The certificate of title was mailed to Mary at her address.
The evidence that Robert gifted the car to his estranged wife is admissible evidence and was properly introduced to rebut the presumption of ownership and establish that he was not the beneficial owner of the car. The question then becomes whether, in light of this evidence, the trial court properly denied the motion *157 for directed verdict and whether it is sufficient evidence upon which a jury could legally predicate a verdict in Robert’s favor. This court and others have repeatedly indicated that a party moving for a directed verdict has a difficult burden to overcome. As this court has explained:
A motion for directed verdict should only be granted if no view of the evidence could support a verdict for the non-moving party. The trial court must evaluate the evidence in a light most favorable to the non-moving party, and indulge every reasonable inference possible in that party’s favor. If there are conflicts in the evidence or different reasonable inferences can be drawn from the evidence, the issues should bé submitted to the jury and not decided by the trial court as a matter of law.
Goss v. Permenter, 827 So.2d 285, 287-88 (Fla. 5th DCA 2002) (footnote omitted), review denied, 845 So.2d 889 (Fla.2008); see also Harris v. Gandy, 18 So.3d 569 (Fla. 1st DCA 2009); Scott v. TPI Rests., Inc., 798 So.2d 907, 909 (Fla. 5th DCA 2001) (“When considering a motion for directed verdict, the trial court is required to evaluate the evidence in the light most favorable to the plaintiff and every reasonable inference therefrom must be indulged in the plaintiffs favor. If there are conflicts in the evidence or different reasonable inferences may be drawn from it, then the issue is a factual one that should be submitted to the jury and not be decided by the trial court as a matter of law.” (citations omitted)). This standard applies to the trial court’s consideration of a motion for directed verdict and to our review of the trial court decision. Scott.
The reasonable inferences that can be drawn from the evidence evaluated in the light most favorable to Robert, the non-moving party, are: Robert made a gift of the car to Mary; Robert had no right of control over the vehicle; he had no beneficial ownership interest in the vehicle; the only person with the right of control over the vehicle was Mary, from whom Robert was divorced; and the only beneficial owner was Mary. Appellant contends that Robert did not take his name off the certificate of title and, therefore, he may have had the right to purchase insurance for it or to sell it. If that is conflicting evidence, or if it could produce different reasonable inferences, the trial court was required to submit the case to the jury and not decide the issue as a matter of law. Scott; Reid. Accordingly, the trial court properly denied the motion for directed verdict and submitted the case to the jury. The evidence is sufficient for the jury to predicate a verdict in favor of Robert and that is exactly what the jury did. In order to reverse that verdict, the majority bases its decision on their narrow exception theory previously discussed, their contract theory, and their HAC theory (appropriately labeled by Judge Griffin). But these are not viable legal theories for this case.
The majority makes much of the documents that Robert signed at the dealership, contending that based on contract principles, Robert should not be allowed to testify contrary to their provisions. Those documents are: a purchase agreement with the dealership, which he signed as “purchaser”; a Gator Chrysler Suzuki Privacy Notice, which he signed as “co-customer”; a Daimler-Chrysler Motors Company LLC warranty disclosure form, which he signed as “co-customer”; a State of Florida Motor Vehicle Dealer Reassignment Supplement, which he signed as “buyer”; and a State of Florida Motor Application for Certificate of Title with/without Registration, which he signed as “co-owner.” It is clear that Robert was a customer of the dealership and that he was a purchaser and buyer of the automobile he gifted to his estranged wife, and he *158 never testified otherwise. However, being a buyer, purchaser, or customer does not make the person an owner for purposes of the dangerous instrumentality doctrine. The jury considered those documents and it concluded that they did not prove that Robert was the owner under that common law doctrine. Regarding the application for title, that document was signed by Robert as “co-owner” and that led to his name being on the certificate of title that was subsequently issued, but that does not conclusively establish ownership as a matter of law because the title only creates a rebuttable presumption of ownership. Farrelly v. Heuaeker, 118 Fla. 340,159 So. 24, 25 (1935); Sterling; Deangelo. The question here is whether Robert rebutted the presumption of ownership created by the certificate of title and, based on the uncontradicted facts of this case, he clearly did.
The majority cites two cases to support its contract theory and neither is applicable to the instant case. In Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957), the court was concerned with a dispute between two parties to an unambiguous written contract regarding business dealing between them. The court held that “when competent parties reduce their engagements to writing in terms that create a legal obligation without any uncertainty as to the object or extent of the engagement as between them, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing.” Id. at 608. The other case is Hale v. State, 838 So.2d 1185 (Fla. 5th DCA), review denied, 848 So.2d 1154 (Fla.2003), and the pertinent language picked out of that opinion by the majority is not even the holding of the court. Hale is a criminal case wherein this court stated in dicta that were this a civil transaction, the principle would apply that a party who signs a contract and does not read it is bound by that agreement. I agree that, as between parties involved in litigation over an unambiguous contract, the contract is the best expression of their intent. Gendzier and Hale are inapplicable because the contract to purchase the vehicle was made between Robert and the dealership that sold him the car and his testimony does not contradict that agreement. He does not even dispute that he read it. However, the dealership is not a party to these proceedings and that agreement is not at issue. This case involves a gift that Robert made to his estranged wife of the vehicle and that is a matter between the two of them, not the dealership. Moreover, the purchase agreement nowhere states that Robert could not purchase the car as a gift for his wife or that he became the owner for purposes of the dangerous instrumentality doctrine. That document was executed solely for the purpose of Robert’s purchase of the vehicle from the dealership and he does not dispute that fact, but that fact and that agreement in no way constitute as a matter of law any agreement or statement as to why he was purchasing the vehicle and for whom. While that document was properly admitted in evidence, the jury apparently did not think much of it and clearly did not think that it established ownership in Robert or that it contradicted his testimony concerning the gift.
As to the majority’s HAC theory, there is little I can add to Judge Griffin’s analysis other than to respectfully make a couple of comments. To hold as the majority does that a man would attempt to beguile and charm his estranged wife back into a marriage on the verge of dissolution by giving her half a car defies logic and common sense. Moreover, this theory makes its first appearance in the majority opinion because it was never argued by the parties in the trial proceedings or in this appeal.
*159 In Aills v. Boemi, 29 So.3d 1105 (Fla. 2010), the court reviewed an opinion rendered by the Second District Court that reversed a judgment based on legal arguments that were not made in the trial court. In framing the issue, the Florida Supreme Court stated that “[t]he question before us is whether the district court erred in reversing the trial court’s judgment on a ground that we find from the record was not presented to the trial court and thus not preserved for appellate review.” Id. at 1108. In reversing the Second District Court, the high court held, “[T]o be preserved for appeal, ‘the specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal.’ ” Id. at 1109 (quoting Chamberlain v. State, 881 So.2d 1087, 1100 (Fla.2004)); see also Keech v. Yousef, 815 So.2d 718, 719-20 (Fla. 5th DCA 2002) (“A legal argument must be raised initially in the trial court by the presentation of a specific motion or objection at an appropriate stage of the proceedings. The failure to preserve an issue for appellate review constitutes a waiver of the right to seek reversal based on that error.” (citation omitted)).
The majority cites to and quotes from several statutes that provide a definition of “owner.” The majority’s discussion of those definitions displays a profound misunderstanding of the principle of materiality, which seems to be a recurrent theme of the majority opinion. The only definition of owner that applies in this case is the definition provided by the courts and the issue in this case is beneficial ownership. Those statutes have nothing to do with that issue and are clearly immaterial, but in the same breath the majority declares Robert’s testimony regarding his gift to be immaterial when it clearly is not. Specifically, section 324.021(9)(b)3., Florida Statutes, provides that an owner who loans a motor vehicle to another shall be liable up to specified limits of damages. That statute was enacted as a subpart of a more encompassing statute intended to reduce the exposure of lessors from unlimited damages when they enter into a rental agreement to lease their vehicle to another and to reduce the exposure of individuals to unlimited damages who loan their vehicle to another. The issue in this appeal does not involve loans or leases of any sort and it does not involve a damage award. Moreover, section 324.021 specifically provides that the definitions, which include owner, are “for the purpose of this chapter,” which is financial responsibility. The majority also cites to the definition of owner found in section 316.003(26), Florida Statutes, which simply provides that an owner is one who has legal title to the vehicle. What the majority fails to mention is that the statute specifically states that that definition is “for purposes of this chapter” and the purpose of chapter 316 is to “make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities.” § 316.002, Fla. Stat. (2010). The issue in this case has nothing to do with traffic laws or ordinances and the definition of owner contained in that chapter has nothing to do with the dangerous instrumentality doctrine or this case. Hence, the majority’s contention that the definition of “owner” has been codified in various statutes is immaterial to the issue in this case because the courts provide the definition of owner for purposes of the dangerous instrumentality doctrine. That definition has been codified in the standard jury instructions and that is the definition the trial court gave to the jury in the instant case.
The majority goes so far as to contend that the provisions of chapter 319, Florida Statutes, specifically section 319.22, require compliance with the formalities of *160 sales and transfers in order to avoid liability. That is simply wrong. In Reid, this court held that those statutory provisions are a shield, not a sword, meaning that if a person does comply and his or her name is deleted from the title, a shield is raised and liability will generally , not attach, but the failure to comply is not a sword to be used to impose liability. Reid, 600 So.2d at 1308.
Finally, I disagree with the contention in the majority opinion that the ultimate issue is whether Robert had an “identifiable property interest” in the vehicle. That language derives from the statement in Aurbaeh that “[i]n determining who is vicariously liabl[e] under the dangerous instrumentality doctrine, this Court repeatedly has required that the person held vicariously liable have an identifiable property interest in the vehicle, such as ownership, bailment, rental, or lease of a vehicle.” Aurbaeh, 753 So.2d at 62. Those categories of identifiable property interest are contained in Standard Jury Instruction (Civil) 3.3(a). Ownership is the only category involved in the instant case, and an owner is one who has legal title and beneficial ownership of the vehicle. An identifiable property interest therefore does not derive solely from legal title, as Appellant and the majority seem to infer, but from beneficial ownership and that is the ultimate issue in this case.
The trial court properly denied the motion for directed verdict. The jury, after proper instruction from the trial court, considered all of the evidence and determined that Robert was not an owner. He was not an owner because, when he gifted the car to Mary, he delivered possession of it to her and relinquished all right of authority and control over it. That is the essence of a gift. Hence, he was not the owner because he was not a beneficial owner of the vehicle. That is the issue in this case, it has been resolved by the jury, and that should conclude the matter. I, therefore, respectfully dissent.
PALMER, J., concurs.

. Appellant raises a fall-back issue that the verdict is against the manifest weight of the evidence and, therefore, the trial court erred in denying her motion for new trial. This court has consistently held that "[t]he question for an appellate court is not whether or not the evidence was contrary to the manifest weight of the evidence presented below. Indeed that is the question addressed to the trial court on motion for a new trial. Rather, the appellate court is limited to considering whether or not the trial court abused its discretion in denying a new trial.” Dewitt v. Maruhachi Ceramics of Am., Inc., 770 So.2d 709, 711 (Fla. 5th DCA 2000); see also Pena v. Vectour of Fla., Inc., 30 So.3d 691 (Fla. 1st DCA 2010); Rosario-Paredes v. J.C. Wrecker Serv., 975 So.2d 1205, 1207 (Fla. 5th DCA), review denied, 990 So.2d 1059 (Fla.2008). I will not address this issue any further other than to say, based on this record, we cannot conclude that the trial court abused its discretion in denying Appellant's motion for new trial.

. This jury instruction has been renumbered 401.14(a) without change. See In re Standard Jury Instructions in Civil Cases-Report No. 09-01, 35 So.3d 666 (Fla.2010).

. See Charles W. Ehrhardt, Florida Evidence § 401.1 at 133 (2007 ed.) ("Included within the section 90.401 definition of relevancy is the concept of materiality; the evidence must tend to prove or disprove a material fact. When evidence is offered to prove a fact which is not a matter in issue, it is said to be immaterial." (footnote omitted)); Jordan ex rel. Shealey v. Masters, 821 So.2d 342, 349 (Fla. 4th DCA 2002) (quoting Ehrhardt); see also Sims v. Brown, 574 So.2d 131, 134 (Fla. 1991) (stating that the test of materiality is the "bearing on a fact to be proved”).