# Third District Court of Appeal

## State of Florida

Opinion filed February 8, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2164
Lower Tribunal No. 18-792-P
_____

**James Randolph Harris,**
Appellant,

vs.

**Sunbelt Rentals, Inc., etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

McLuskey, McDonald & Hughes, P.A., and John W. McLuskey, for appellant.

Wallen | Kelley, and Todd L. Wallen, for appellee Sunbelt Rentals, Inc.

Before LOGUE, SCALES and HENDON, JJ.

SCALES, J.

In this personal injury action, appellant James Randolph Harris, the plaintiff below, appeals entry of final summary judgment in favor of the co-defendant below, appellee Sunbelt Rentals, Inc. ("Sunbelt"). Harris sustained injuries when a Bobcat skid-steer loader being operated by co-defendant Lee Risher dropped a large object onto Harris's foot. Harris's complaint sought to hold Sunbelt, the loader's owner, (i) directly liable for Harris's injuries for Sunbelt's alleged negligent failure to require that the operators of its loader be properly trained (count I), and (ii) vicariously liable for Risher's alleged, negligent operation of the loader under Florida's dangerous instrumentality doctrine (count II).

The trial court adjudicated Harris's claims against Sunbelt in two separate summary judgment orders, and under two different summary judgment standards. First, the trial court adjudicated Harris's vicarious liability claim against Sunbelt in a September 10, 2020 partial summary judgment order that concluded the dangerous instrumentality doctrine did not apply here because Harris was, as a matter of law, Risher's "joint adventurer" at the time of the accident. Florida's former summary judgment standard applies to this September 10, 2020 partial summary judgment order. See In re Amendments to Fla. R. Civ. P. 1.510, 317 So. 3d 72, 77-78 (Fla. 2021).

2

Then, about a year later, the trial court adjudicated Harris's negligence claim against Sunbelt and entered an October 12, 2021 final summary judgment[1] that concluded Sunbelt's alleged, negligent conduct was not the proximate cause of Harris's injuries. Florida's "new" summary judgment standard applies to the trial court's adjudication of Harris's negligence claim. See In re Amendments to Fla. R. Civ. P. 1.510, 317 So. 3d at 77-78 (requiring, effective May 1, 2021, that Florida Rule of Civil Procedure 1.510 be construed in accordance with the federal summary judgment standard).

Without further elaboration, we affirm that portion of the October 12, 2021 final summary judgment adjudicating Harris's active negligence claim against Sunbelt. Because, though, genuine issues of material fact exist as to Harris's status as a joint adventurer, we reverse that portion of the final summary judgment incorporating the September 10, 2020 partial summary judgment order, and remand for further proceedings on Harris's vicarious liability claim against Sunbelt.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY[2]

---

[1] The September 10, 2020 partial summary judgment order (adjudicating Count II of Harris's complaint) was subsumed into this October 12, 2021 order, so that the resulting October 12, 2021 summary judgment order constituted a final adjudication of all of Harris's claims against Sunbelt.

[2] The facts related herein are taken from the summary judgment evidence submitted by the parties below, viewed in the light most favorable to Harris.

Eric C. Pagan is a licensed contractor in the business of land and debris clearing. In September 2017, Pagan rented the subject loader from Sunbelt to clean up debris in Key Largo caused by Hurricane Irma. Lee Risher is a licensed contractor who Pagan subsequently hired for one such debris clean-up job on private property and to whom Pagan entrusted Sunbelt's loader to perform the task.

Appellant Harris accompanied Risher to the clean-up site and assisted Risher with clearing the debris. Specifically, Harris rode to the clean-up site in Risher's truck to which the trailer carrying the loader was attached. Upon reaching the site, Harris placed portable ramps on the trailer so that Risher could offload the loader from the trailer. Each time Risher filled the trailer with debris using the loader, Harris drove the truck (to which the trailer was still attached) to a separate location and emptied the debris from the trailer. The accident that is the subject of this litigation occurred after the debris was cleared, while Harris was retrieving the portable ramps so that Risher could drive the loader back onto the trailer.

The loader was equipped with a grapple, which is a claw-like attachment that is useful for grasping large objects, like fallen trees. The loader could also be equipped with a general-purpose bucket attachment, that is useful for carrying away dirt, soil, and other large objects. Risher

4

brought his own bucket attachment to the clean-up site in case it was needed. Importantly, the ramps were placed inside this bucket attachment after Risher offloaded the loader from the trailer, and the bucket attachment was then set out of the way, on the ground, for the duration of the job.

After the last of the debris on the property was cleared, Risher directed Harris to retrieve the ramps from within the bucket attachment so that Risher could drive the loader back onto the trailer. Rather than leaving the bucket attachment on the ground, however, Risher picked up the bucket attachment using the loader's grapple and drove the loader towards the trailer. After the loader came to a complete stop, Harris approached the loader on foot and reached into the bucket attachment to retrieve the ramps from within the bucket. As Harris was attempting to lift the ramps out of the bucket attachment, the loader lurched forward suddenly and unexpectedly, and the bucket attachment slid from the grapple's grip. The bucket attachment fell on Harris's foot, amputating two of his toes.

In November 2018, Harris filed this personal injury action against Pagan, Risher, Lee Risher Construction, Inc., and Sunbelt. As to Sunbelt, Harris alleged (i) a claim of direct negligence (count I) for Sunbelt's alleged failure to require that the operators of the rented loader be properly trained in its safe operation, and (ii) pursuant to Florida's dangerous instrumentality

5

doctrine, a claim of vicarious liability (count II) for Risher's alleged negligent operation of the loader. As stated, the trial court entered separate summary judgment orders on each count of Harris's complaint, culminating in the October 12, 2021 final summary judgment that Harris timely appealed.

## II.    ANALYSIS[3]

### A. The Dangerous Instrumentality Doctrine and the Joint Adventurer Exception Thereto

"Adopted in 1920, Florida's dangerous instrumentality doctrine imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to *another*." Aurbach v. Gallina, 753 So. 2d 60, 62 (Fla. 2000) (emphasis added).[4] Under the doctrine, "an owner who gives

---

[3] "An appellate court reviews *de novo* the trial court's ruling on a motion for summary judgment." Simmons v. Pub. Health Tr. of Miami-Dade Cnty., 338 So. 3d 1057, 1060 (Fla. 3d DCA 2022). While "the extension of the dangerous instrumentality doctrine is generally a pure question of law," Salsbury v. Kapka, 41 So. 3d 1103, 1105 (Fla. 4th DCA 2010), summary judgment may only be entered where the underlying facts establishing the extension of the doctrine are not in dispute. See Lambert v. Indian River Elec., Inc., 551 So. 2d 518, 520 (Fla. 4th DCA 1989).

[4] The doctrine generally applies to protect third party members of the general public who have been injured by the negligent operation of a motor vehicle. Smith v. Ryder Truck Rentals, Inc., 182 So. 2d 422, 424-25 (Fla. 1966); Fla. Power & Light Co. v. Price, 170 So. 2d 293, 298 (Fla. 1964). For this reason, under the doctrine "the driver of an automobile which was entrusted to him by its owner cannot hold the owner liable for injuries sustained by the driver arising from his own negligent operation of the automobile." Price, 170 So.

authority to another to operate the owner's vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated safely." Id. The doctrine extends to "lessees and bailees of motor vehicles who authorize other individuals to operate the motor vehicles." Id. at 63.

Over the years, the Florida Supreme Court has recognized certain exceptions to the dangerous instrumentality doctrine. The exceptions include: (i) where the owner "voluntarily entrusts his or her vehicle to a repair service . . . , so long as the owner does not exercise control over the injury-causing operation of the vehicle and is not otherwise negligent"; (ii) where there has been a "breach of custody amounting to a species of conversion or theft"; and (iii) "where a vehicle owner possesses bare naked title while another party holds beneficial ownership." Sager v. Blanco, 351 So. 3d 1129, 1132 (Fla. 3d DCA 2022).

Another recognized exception to the doctrine, relevant here, occurs where the bailee entrusted with the owner's vehicle injures another while both persons are using the vehicle "in furtherance of a common purpose"

---

2d at 298. Nor can an injured bailee of a vehicle hold the vehicle's owner liable for injuries caused by a co-bailee's or sub-bailee's negligent operation of the vehicle. See Raydel, Ltd. v. Medcalfe, 178 So. 2d 569, 572 (Fla. 1965); State Farm Mut. Auto. Ins. Co. v. Clauson, 511 So. 2d 1085, 1086 (Fla. 3d DCA 1987).

(i.e., where the bailee and injured person are considered to be "joint adventurers"). See Raydel, Ltd. v. Medcalfe, 178 So. 2d 569, 570-72 (Fla. 1965). In that instance, the injured joint adventurer is not viewed as an unsuspecting member of the general public and, therefore, the vehicle's owner cannot be held vicariously liable for the bailee's negligent operation of the vehicle. Id. at 572; Ferrer v. FGC Enters., 805 So. 2d 967, 967 (Fla. 3d DCA 2002) (citing Raydel). "The test of a joint venture in this context is whether [the individuals] are jointly operating and controlling the movement of the vehicle with common purpose and community of interest in the enterprise, with equal right to control and direct the conduct of each other." Cutcher v. Walker, 455 So. 2d 1335, 1337 (Fla. 1st DCA 1984).

### B. The Trial Court's Application of the Joint Adventurer Exception to the Dangerous Instrumentality Doctrine in this Case

The parties did not dispute below that the subject Bobcat loader was a dangerous instrumentality. Nor was it disputed below that Sunbelt rented the loader to Pagan, who then entrusted the loader to Risher to perform a debris clean-up job. In moving for summary judgment on Harris's vicarious liability claim, Sunbelt argued primarily that it could not be held vicariously liable for Risher's alleged, negligent operation of the loader under the dangerous instrumentality doctrine because Harris "was a joint adventurer in the use of the Bobcat at the cleanup site, and in attempting to load the unit onto a trailer

8

for transport, when he was injured." The trial court's September 10, 2020 partial summary judgment order adopted Sunbelt's argument in this regard, and, citing only to Raydel and Ferrer, concluded that, as a matter of law, Harris and Risher were joint adventurers: "Mr. Harris was participating in the use of the Bobcat at the time of his injury and he cannot recover under the dangerous instrumentality doctrine."

To prevail, though, in its summary judgment motion under the former standard, Sunbelt had the burden to establish, through undisputed facts, that Harris and Risher were "jointly operating and controlling the movement of the vehicle with common purpose and community of interest in the enterprise, with equal right to control and direct the conduct of each other." Cutcher, 455 So. 2d at 1337.[5] At most, the facts recited herein establish that Harris and Risher acted with common purpose and community of interest in loading/unloading the loader from the trailer and in cleaning up the debris from the jobsite. Absent from this record are undisputed facts establishing

---

[5] Under Florida's former summary judgment standard, "[i]t is axiomatic that on a motion for summary judgment, it is the burden of the movant to demonstrate the nonexistence of any disputed issue of material fact." Underwriters at Lloyds, London v. VIP Distribs., Inc., 629 So. 2d 291, 292 (Fla. 3d DCA 1993). Until this occurs, "no burden rests upon the non-moving party to submit evidence in proof of the essential elements of its cause of action." Croft v. York, 244 So. 2d 161, 163 (Fla. 1st DCA 1971).

Harris's joint operation and control of the loader, or any facts establishing Harris's equal right to control and direct Risher's operation of the loader.[6] We are, therefore, compelled to reverse that portion of the final summary judgment adjudicating Count II of Harris's complaint in favor of Sunbelt.[7]

---

[6] It is in this regard that <u>Ferrer</u> – a case in which this Court affirmed a summary judgment that concluded, as a matter of law, the joint adventurer exception to the doctrine was applicable to defeat a plaintiff's vicarious liability claim against a golf cart's owner – is distinguishable. In <u>Ferrer</u>, the injured plaintiff had been driving a golf cart with a fellow member of a golf league. 805 So. 2d at 967. Members of the golf league received reduced green fees and use of the course's golf carts. <u>Id.</u> When the plaintiff got out of the golf cart to hit his ball, the passenger moved into the cart's driver's seat and, in driving the cart to where his ball was located, struck and injured the plaintiff. <u>Id.</u> It is obvious from these facts that both the fellow member and the plaintiff had joint operation and control of the golf cart with the common purpose and community of interest in playing golf, with equal right to control and direct each other's conduct as to the cart. Such facts are not present here.

[7] Harris argues, as he did below, that the joint adventurer exception to the dangerous instrumentality doctrine was overruled by the Florida Supreme Court in <u>Newton v. Caterpillar Financial Services Corp.</u>, 253 So. 3d 1054 (Fla. 2018). We agree with the trial court, though, that <u>Newton</u>'s primary focus was on whether the vehicle involved in that case (also a skid steer loader) was a dangerous instrumentality. <u>Id.</u> at 1055. <u>Newton</u> determined that "a loader is a dangerous instrumentality as a matter of law." <u>Id.</u> at 1057. As noted, the parties do not dispute that the instant loader was a dangerous instrumentality.

<u>Newton</u> also concluded, in cursory fashion, that "Newton's status as an independent contractor does not exclude him from protection under the dangerous instrumentality doctrine." <u>Id.</u> While not at all clear, it appears that the Florida Supreme Court may have been addressing, on the facts of that case, the application of an entirely different exception to the dangerous instrumentality doctrine: the independent contractor exception. <u>See Price</u>,

## III. CONCLUSION

Accordingly, we affirm that portion of the trial court's October 12, 2021 final summary judgment that adjudicated, in favor of Sunbelt, Harris's active negligence claim (count I). We reverse that portion of the final summary judgment that incorporated the September 10, 2020 order that granted partial summary judgment in favor of Sunbelt on Harris's vicarious liability claim (count II), and remand for further proceedings.

Affirmed in part; reversed in part and remanded.

---

170 So. 2d at 298. Whatever the case, Harris's status as an independent contractor was not argued by the parties at any point in the lower proceedings. Moreover, the Newton court neither mentioned the joint adventurer exception to the dangerous instrumentality doctrine nor even cited to the Court's Raydel opinion – that first articulated the joint adventurer exception – or its progeny. We, therefore, reject Harris' argument that Newton abrogated the joint adventurer exception to the dangerous instrumentality doctrine because our high court has been steadfast in its instruction that it does not overrule itself *sub silentio*. See Puryear v. State, 810 So. 2d 901, 905 (Fla. 2002).